UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL FREIGHT, INC.,<br>　　　　　Plaintiff,<br>vs.<br><br>ROBERT A. ROMANO, in his capacity as Acting Treasurer of the State of New Jersey; STEVEN R. HARRIS, in his capacity as Administrator, Unclaimed Property Administration of the State of New Jersey Department of Treasury; and ROBERT H. DAVIDSON, in his capacity as Chief, Unclaimed Property Administration of the State of New Jersey Department of Treasury,<br>　　　　　Defendants. | Civil Action No. 3:15-cv-03579<br><br>Hon. Freda L. Wolfson, U.S.D.J.<br><br>Hon. Lois H. Goodman, U.S.M.J. |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

REED SMITH LLP
Diane Green-Kelly, Esq.
(admitted *pro hac vice*)
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
(312) 207-1000
dgreenkelly@reedsmith.com

REED SMITH LLP
Kellie A. Lavery, Esq.
Princeton Forrestal Village
136 Main Street - Suite 250
Princeton, NJ 08540-7839
(609) 524-2071
klavery@reedsmith.com

Attorneys for Plaintiff
National Freight, Inc.

# TABLE OF CONTENTS

                                                                          **Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   ADDITIONAL FACTS ..................................................................................................2

III.  LEGAL ARGUMENT....................................................................................................3

       A.    Plaintiff Has A Reasonable Probability Of Success On The Merits.................................................................................................................3

             1.    The Court Has Subject Matter Jurisdiction To Grant Preliminary Injunctive Relief..................................................................3

             2.    The Interstate Commerce Commission Termination Act Bars Enforcement Of The Credits Assessment.........................3

             3.    The Assessments Violate The Federal Common Law Governing Escheats............................................................................9

             4.    The Assessments Violate The Commerce Clause. ...................11

       B.    Plaintiff Has Established That It Will Be Irreparably Harmed If Preliminary Injunctive Relief Does Not Issue................................................. 13

       C.    A Balancing Of The Harms Favors Granting A Preliminary Injunction, Which Also Is In The Public Interest.............................. 14

       D.    The Court Has Discretion To Waive A Bond ................................... 15

IV.  CONCLUSION............................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Express Travel Related Servs. Comp., Inc. v. Sidamon-Eristoff*,
  755 F.Supp. 2d 556 (D. N.J. 2011) ................................................................. 3

*Crowley v. Local No. 82, Furniture & Piano*,
  679 F.2d 978 (1st Cir. 1982) ........................................................................ 15

*Dan's City Used Cars, Inc. v. Pelkey*,
  133 S.Ct. 1769 (2013) ............................................................................... 5, 8

*Delaware v. New York*,
  507 U.S. 490 (1993) ...................................................................... 1, 9, 10, 13

*Dilts v. Penske Logistics, LLC*,
  769 F.3d 637 (9th Cir. 2014) ......................................................................... 5

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) ........................................................................................ 9

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
  276 F.3d 160 (3d Cir. 2001) .......................................................................... 3

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
  903 F.2d 186 (3d Cir.1990) ......................................................................... 15

*ICU Investigations, Inc. v. Simonik Moving & Storage, Inc.*,
  2009 WL 2476225 (N.J. Super. App. Div. Aug. 14, 2009) ...................... 6, 8

*Illinois Corporate Travel, Inc. v. Amer. Airlines, Inc.*,
  889 F.2d 751 (7th Cir. 1989) ......................................................................... 6

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .............................................................................. 5, 6, 8

*N. J. Retail Merchants Ass'n. v. Sidamon-Eristoff*,
  669 F.3d 374 (3d Cir. 2012) ................................................................ *passim*

*New Jersey v. Amsted Industries*,
   48 NJ 544 (1967) .................................................................................. 10

*Ocean City Express Co. v. Atlas Van Lines, Inc.*,
   46 F.Supp. 3d 503 (D.N.J. 2014) ............................................................. 5

*Old Bridge Chems., Inc. v. N.J. Dept. of Envtl. Protection*,
   965 F.2d 1287 (3d. Cir. 1992) ................................................................ 11

*Pennhurst State School and Hospital v. Halderman*,
   465 U.S. 89 (1984) .................................................................................. 3

*Pennsylvania v. New York*,
   407 U.S. 206 (1972) ............................................................................ 1, 9

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ............................................................................. 12

*Robertson v. Liquor Control Bd.*,
   102 Wn. App. 848 (Wash. Ct. App. 2000) ............................................... 5

*Rowe v. N.H. Motor Transport Ass'n*,
   552 U.S. 364 (1972) .................................................................. 5, 6, 8, 9

*State v. Sperry & Hutchinson Co.*,
   153 A.2d 691 (N.J. App. Div. 1959), aff'd 157 A.2d 505 (N.J.
   1960) ........................................................................................................ 5

*Statland v. Amer. Airlines, Inc.*,
   998 F.2d 539 (7th Cir. 1993) .................................................... 5, 6, 7, 8

*Sys. Operations, Inc. v. Scientific Games Dev. Corp.*,
   555 F.2d 1131 (3d Cir.1977) ................................................................. 15

*SZL, Inc. v. Indus. Claim Appeals Office*,
   254 P.3d 1180 (Colo. Ct. App. 2011) ...................................................... 5

*Temple University v. White*,
   941 F.2d 201 (3d Cir. 1991) .................................................................. 15

*Texas v. New Jersey*,
   379 U.S. 674 (1965) .................................................................. 1, 11, 12

*UPS, Inc. v. Flores-Galarza*,
  318 F.3d 323 (1st Cir. 2003) .................................................................................. 6, 8

*Vail v. Pan Am Corp.*,
  616 A.2d 523 (N.J. Sup. Ct. 1992) ............................................................................ 5

*W. Ports Transp., Inc. v. Emp. Sec.*,
  110 Wn. App. 440 (Wash. Ct. App. 2002) ................................................................ 5

*Western Union Telegraph Co. v. Pennsylvania*,
  368 U.S. 71 (1961) ................................................................................................... 12

*Witty v. Delta Air Lines, Inc.*,
  366 F.3d 380 (5th Cir. 2004) ................................................................................. 5, 6

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................................... 3

**Statutes**

49 U.S.C. § 14501(c)(1) ................................................................................................ 4

**Rules**

Fed. R. Civ. P. 25(d) .................................................................................................... 1

**Other Authorities**

Houghton, *et al., Unclaimed Property*, 74-3rd C.P.S. (BNA 2014) ........................... 4

Motor Carrier Act of 1980, 94 Stat. 793 ...................................................................... 9

Select USA, *Logistics and Transportation Industry in the United
  States*, available at http://selectusa.commerce.gov/industry-
  snapshots ................................................................................................................. 13

I. **PRELIMINARY STATEMENT**

Defendants[1] oppose the preliminary injunctive relief requested by Plaintiff National Freight, Inc. ("NFI" or "Plaintiff") because Plaintiff's Verified Complaint For Equitable, Declaratory, And Injunctive Relief (the "Complaint") (DE 1) includes one Count for violation of state law, specifically, the New Jersey Unclaimed Property Act, N.J.S.A. §46:30B-1, *et. seq.* (the "UPA"). However, NFI is entitled to a preliminary injunction based on its claims that Defendants' conduct violates the Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (codified in scattered sections of subtitle IV of title 49 of the United States Code) (the "ICCA"), the Commerce Clause of the U.S. Constitution, and federal common law as established in *Texas v. New Jersey*, 379 U.S. 674 (1965), *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993) (collectively, the *Texas* Cases). Therefore, preliminary injunctive relief is appropriate here. *See N. J. Retail Merchants Ass'n. v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citation omitted) (granting preliminary injunctive relief enjoining enforcement of the UPA).

---

[1] Defendants are Robert A. Romano, Acting Treasurer of the State of New Jersey (the "State"), Steven R. Harris, Administrator of the Unclaimed Property Administration of the Department of Treasury, and Robert H. Davidson ("Chief"), Chief of the Unclaimed Property Administration (collectively, "Defendants"). Robert A. Romano has been sworn in and thus is substituted automatically for former Treasurer Andrew P. Sidamon-Eristoff pursuant to Fed. R. Civ. P. 25(d).

## II. ADDITIONAL FACTS

In addition to the facts alleged in its Complaint (DE 1), which were verified under oath by Gary Nichols in the Verification, Plaintiff responds to the Certification of Robert H. Davidson (the "Davidson Cert.") (DE 15-3) and Certification of Prashant Shah ("Shah Cert.") (DE 15-5) submitted with Defendants' Brief in Opposition to Plaintiff's Order To Show Cause For Preliminary Injunction ("DE 15-1"). Although NFI filed unclaimed property reports in 2011-2013, NFI did not report customer credits as unclaimed property. Certification of Michelle André ("André Cert."), ¶ 6. Further, on May 14, 2015, Michelle André, Plaintiff's outside consultant, asked the Chief for a 60-day extension of time for NFI to review the 28-page Credits Audit Report[2] and respond. (André Cert. ¶¶ 7-8). Ms. André also asked the Chief to waive additional interest on any assessment. *Id.* The Chief agreed to a 60 day extension and to waive additional interest, but *only* if NFI did not assert any legal challenges to the assessment. The Chief stated that if NFI intended to raise any legal challenges to the Credits Assessment, he would charge interest at the statutory rate (*i.e.*, 10%+) on all amounts. *Id.* ¶ 9. This would result in an assessment of $1 million or more in additional interest. *Id.*

---

[2] Initially capitalized terms have the meaning ascribed in Memorandum of Law in Support of Plaintiff National Freight, Inc.'s Motion for Preliminary Injunction ("Plaintiff's Mem.") (DE 1-1).

2

## III. LEGAL ARGUMENT

### A. Plaintiff Has A Reasonable Probability Of Success On The Merits.

Plaintiff "need only prove a *prima facie* case, not a certainty that [it] will win" in order to obtain a preliminary injunction. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). Plaintiff has done so here.

#### 1. The Court Has Subject Matter Jurisdiction To Grant Preliminary Injunctive Relief.

Defendants ignore Counts I-III of Plaintiff's Complaint alleging violations of federal law and the U.S. Constitution when they assert that the defense of sovereign immunity precludes preliminary injunctive relief. (DE 15-1, at 9-10).[3] The defense of sovereign immunity fails where, as here, a plaintiff seeks a declaratory judgment and prospective injunctive relief for such violations. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102 (1984) (citing *Ex parte Young*, 209 U.S. 123 (1908)). *See also American Express Travel Related Servs. Comp., Inc. v. Sidamon-Eristoff*, 755 F.Supp. 2d 556, 570-71 (D. N.J. 2011) (rejecting sovereign immunity defense) (citations omitted).

#### 2. The Interstate Commerce Commission Termination Act Bars Enforcement Of The Credits Assessment.

Each of Defendants' arguments against NFI's claim that the ICCA preempts enforcement of the Credits Assessment fails. First, Defendants assert, incorrectly,

---

[3] Docket entry page numbers are the pages at the bottom center of the brief or exhibit.

3

that NFI construes the ICCA preemption provision governing motor carriers too broadly because that provision bars enforcement of state laws "related to a price, route, or service of any motor carrier . . . *with respect to the transportation of property*," (49 U.S.C. § 14501(c)(1) (emphasis added)). (DE 15-1, at 12). However, the Credits Assessment is comprised *entirely* of credits arising from customer payments made in connection with the transportation of property by NFI, a motor carrier governed by the ICCA. (DE 1, ¶¶ 50, 52; DE 15-4, Ex. E at UA000046-49). The UPA is a custodial statute; "a state's authority to receive and retain unclaimed property is derived from the owner's rights in that property, and the state's authority exists primarily to protect the owner's rights." *See* Houghton, *et al., Unclaimed Property*, 74-3rd C.P.S. (BNA 2014) at A-23. As such, the State's rights in any credits comprising the Credits Assessment is no greater than the rights of the NFI customers associated with the credits, customers who purchased NFI's services *for the transportation of property*. Consistent with industry practice, many of NFI's contracts with customers limit to an 18-24 month period the time in which customers must assert claims regarding payments; this period expires before the 3-year dormancy period in the UPA. (DE 1, ¶ 71). Defendants nevertheless seek to return these credits to customers, thereby overriding NFI's refund policies and contracts in direct conflict with Congress'

4

deregulatory objectives in enacting the ICCA.[4] *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386-90 (1992). None of the cases cited by Defendants to refute preemption related to transportation services.[5]

Second, Defendants assert incorrectly that the UPA is not preempted because the UPA "on its face, does not address motor carriers." (DE 15-1, at 13). However, state laws of general applicability that do not mention motor carriers are preempted when they are applied in a manner that relates to rates, routes and/or service. *See Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 370-72 (1972) (Maine law regulating tobacco retailers); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004) (state tort claims from overcrowding on passenger aircraft); *Statland v. Amer. Airlines, Inc.*, 998 F.2d 539, 541-42 (1993) (claims of breach of fiduciary duty, breach of contract, and conversion). *Vail v. Pan Am Corp.*, 616

---

[4] Defendants cannot claim rights by seeking escheat that customers do not have. *See State v. Sperry & Hutchinson Co.*, 153 A.2d 691 (N.J. App. Div. 1959) (New Jersey cannot "merely by seeking escheat, . . . convert inchoate rights into choate, enforceable rights . . . State's rights are no greater than that of each [creditor]."), aff'd 157 A.2d 505 (N.J. 1960)).

[5] *See* cases cited at DE 15 at 12-13, none of which concerned rates, routes or services for transportation services: *Ocean City Express Co. v. Atlas Van Lines, Inc.*, 46 F.Supp. 3d 503 (D.N.J. 2014) (claims challenging termination of franchise relationship under franchise statute); *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769 (2013) (state law claims for damages stemming from storage and sale of abandoned car); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014) (state employee meal and break laws); *SZL, Inc. v. Indus. Claim Appeals Office*, 254 P.3d 1180 (Colo. Ct. App. 2011) (state tax laws); *W. Ports Transp., Inc. v. Emp. Sec.*, 110 Wn. App. 440 (Wash. Ct. App. 2002) (same); *Robertson v. Liquor Control Bd.*, 102 Wn. App. 848 (Wash. Ct. App. 2000) (cigarette tax laws).

5

A.2d 523 (N.J. Sup. Ct. 1992) (claims for fraud and breach of contract); *ICU Investigations, Inc. v. Simonik Moving & Storage, Inc.*, 2009 WL 2476225 (N.J. Super. App. Div. Aug. 14, 2009) (consumer fraud claims). Here, Defendants seek to apply the UPA to alter NFI's refund practices and policies concerning customer credits, thereby causing those practices to be directly affected by the UPA, rather than by the marketplace. Courts have held state statutes preempted under similar circumstances in *Rowe*, 552 U.S. at 373; *Flores-Galarza*, 883 F.2d at 173, *Stratland*, 998 F.2d at 542; *see also* Plaintiff's Mem. (DE 1-1) at 21-27).

Third, Defendants' assertion that NFI has not shown "direct impact on price" ignores the long line of cases holding that laws of general applicability, and not just those addressed to the airline industry,[6] are preempted if they have anything more than a "tenuous, remote, or peripheral" effect on rates, routes or services. *See Morales*, 504 U.S. at 386-90; *Witty*, 366 F.3d at 383; *UPS, Inc. v. Flores-Galarza*, 318 F.3d 323, 335-36 (1st Cir. 2003); *Statland*, 998 F.2d at 541-42; *Illinois Corporate Travel, Inc. v. Amer. Airlines, Inc.*, 889 F.2d 751 (7th Cir. 1989). Here, Defendants seek to trump NFI's refund policies by returning credits

---

[6] Defendants are incorrect that motor carrier preemption is more limited than the ICCA preemption provision applicable to airlines. (DE 15-1, at 15). *See Rowe*, 552 U.S. at 994-95 (citing U.S. Code Cong. & Admin. News 1994, pp. 1676, 1755 ("motor carriers will enjoy 'the identical intrastate preemption of prices, routes and services as that originally contained in' the Airline Deregulation Act); *ibid.* (expressing agreement with 'the broad preemption interpretation adopted by the United States Supreme Court in Morales'); *id.* at 85.")

to customers more than three years after the transaction without regard to NFI's refund policies and/or NFI's contracts with customers, which often limit the period during which customers may dispute a charge to 18-24 months after the transaction. (Cmplt. ¶ 71). *See Statland*, 998 F.2d at 542 ("We think it obvious that canceled ticket refunds relate to rates.").

Further, NFI's administrative costs of compliance may increase if it has to implement the policies and procedures Defendants dictate in their Credits Audit Report, which provides:

NFI should devise and implement comprehensive and standardized formal policies and procedures . . . with clear accountability to identify, record, resolve, and report stale-dated accounts receivable credits to fulfill its statutory obligations to New Jersey and other states. NFI should also employ due diligence mailings in its effort to return the property back to its rightful owners, including certified return receipt mailings mandated by New Jersey's UUPA for New Jersey property valued at fifty dollars or more. These policies and accounting processes related to unclaimed property should be built into NFI's business calendar and periodically updated to ensure timely identification, follow-through, and reporting of property to all states.

Docket 15-6, Ex. E at UA00045; *see also id.* at UA00044 (NFI lacked such procedures); DE 1, ¶ 70 (costs and thus rates would increase if implemented). Defendants assert that NFI can pass these costs on to its customers. (DE 15-1, at 14). However, that is precisely why the UPA is preempted here; passing costs onto customers *directly* impacts rates.

Defendants incorrectly assert that "NFI fails to allege any impact on the transport of goods, but only raises administrative requirements triggered after a

7

shipping price is set." (DE 15-1, at 14). State law claims are preempted where claims affect refund policies, which by definition, arise only *after* customers have paid for the transportation service. *See e.g., Statland*, 998 F.2d at 542. The Credits Assessment consists entirely of amounts NFI customers already paid for completed transportation services. Defendants' reliance on *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769 (2013) is misplaced (DE 15-1, at 14) because the plaintiff challenged the defendant's right to dispose of plaintiff's abandoned car, nothing related to transportation services. The other cases Defendants cite (DE 15-1, at 14-15) each found preemption where the effect on rates, route or service was indirect. *See Rowe*, 552 U.S. at 372; *UPS*, 318 F.3d at 335-36; *Morales*, 504 U.S. at 386-90.

Fourth, Defendants do not cite a single case supporting their incorrect assertion that the differing purposes of the UPA and the ICCA has any bearing on preemption here. Indeed, in *ICU Investigations*, the plaintiff argued that if the ICCA preempted plaintiff's consumer fraud claims, it would be without a remedy at all, which runs counter to the public welfare purpose of the consumer fraud statutes – the purpose that Defendants allege underlies the UPA here. (DE 15-1, at 2, 15). The New Jersey court rejected the plaintiff's assertion, stating: "Despite the public welfare considerations and salutary purpose of the [consumer fraud statute], we cannot agree with ICU that federal law creates an exception on that basis to exempt state laws it would otherwise preempt." 2009 WL 2475225, at *9.

8

Finally, Defendants' assert, incorrectly, that because the ICCA was recodified in 1995, there is no preemption for credits prior to 1996. (DE 15-1, at 16). First, the Credits Assessment covers report years 1996-2010. Second, while the ICCA did not expressly preempt state law prior to 1995, it impliedly preempted state law when Congress deregulated trucking in 1980. *See* Motor Carrier Act of 1980, 94 Stat. 793; *Rowe*, 552 U.S. at 368 (Congress deregulated trucking in 1980). *See N.J. Retail Merchants Ass'n*, 669 F.3d 374, 391 ("Implied preemption occurs when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). Defendants' attempt to alter NFI's refund policies by escheating credits and returning them to NFI's customers is a complete obstacle to Congress' deregulatory objectives as far back as 1980.

### 3. The Assessments Violate The Federal Common Law Governing Escheats.

Defendants assert that: (1) "[o]ther than precluding multiple liabilities, . . . the[] priority rules are not intended to protect holders" and (2) Defendants are merely seeking to claim the Assessments under the secondary priority rule. (DE 15-1, at 17-18). However, all of the Other States Disbursements Assessment and portions of the other Assessments consist of property belonging to owners with addresses in *other* states, states, which under the primary rule have "the right and power to escheat the debt." *Delaware*, 507 U.S. at 498. Only if the primary rule

9

*fails* because the debtor's books and records lack an address for the owner or the state of the owner's address does not provide for escheat, does the holder's state of incorporation have the authority to escheat the property under the secondary rule. *Id.* at 500. The primary rule has not failed here because NFI has names and addresses. Moreover, as discussed in Plaintiff's Mem. (DE 1-1, at 17), many addresses are in states where the escheat statutes either specifically exempt business-to-business transactions from the reporting requirement, or toll the dormancy period during a continuing business relationship. Defendants cannot claim these amounts under the second prong of the secondary rule (*i.e.*, where a state does not provide for escheat) because those states in fact have escheat statutes that cover the property. "Under *Texas* the creditor's state now has the paramount interest and other states should do what they can to honor it." *New Jersey v. Amsted Industries*, 48 NJ 544, 548 (1967) (barring New Jersey from escheating property where the address was in another state). Further, "the ability to escheat necessarily entails the ability not to escheat." *New Jersey Retailer Merchants Ass'n*, 669 F.3d at 395. The Supreme Court recognized that "[v]arious considerations might motivate states not to exercise custodial escheat." *Id.* "When fashioning the priority rules, the Supreme court did not intend . . . [to] give states

the right to override other states' sovereign decisions regarding the exercise of custodial escheat."[7] *Id.*

### 4. The Assessments Violate The Commerce Clause.

Each of Defendants' reasons for refuting that NFI has a reasonable probability of success on the merits of its Commerce Clause claim fail. First, Defendants assert that "heightened scrutiny is not triggered." (D 15-1, at 21). However, state action that purposefully or arbitrarily undermines uniformity in areas of particular federal importance is given heightened scrutiny. *Old Bridge Chems., Inc. v. N.J. Dept. of Envtl. Protection*, 965 F.2d 1287, 1291 (3d. Cir. 1992). As Plaintiff have discussed (DE 1-1, at 29 and Part III.B.2), the ICCA's well-recognized purpose of deregulating motor carriers is demonstrated by the breadth and reach of the Carrier Preemption Statutes. In addition, the priority rules established in the *Texas* Cases were designed "to provide assurance that holders would not be obligated to remit property to multiple states." (DE 15-1, at 17 (citing *Texas*, 379 U.S. at 678, 683)). Uniform application of unclaimed property laws whereby states take only property allocated to them under the priority rules is

---

[7] Defendants' attempt to distinguish *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d at 393, fails. (DE 15-1, at 18). There, the issue was whether an amendment to the UPA creating a third priority rule that the Supreme Court had rejected, which would have presumed an address where none existed, deprived the state of incorporation of its authority to claim the property under the secondary rule. Similarly, Defendants attempt to deprive the state of the owners' addresses from exercising their sovereign authority over escheat under the primary rule.

11

the only means of preventing multiple liabilities, which otherwise would violate holders' rights to due process. *See Texas*, 379 U.S. at 676-77; *Western Union Telegraph Co. v. Pennsylvania*, 368 U.S. 71, 75 (1961). Here, Defendants want to enforce the UPA in a manner that: (1) conflicts with the deregulatory objectives of Congress under the ICCA, and (2) tramples other states' sovereign authority over escheats by undermining the priority rules. Heighted scrutiny applies here.

But as Plaintiff has discussed (DE 1-1 at 29-30), even under the balancing test in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), the federal importance trumps New Jersey's local interests. Defendants misrepresent the facts when they assert that NFI will not incur additional administrative costs because of "NFI's compliance in recent years." (DE 15-1) at 22. NFI has not reported customer credits as unclaimed property (Andre Cert. ¶ 6) and did not have the applicable procedures (DE-6, Ex. E at 00044). Indeed, the procedures Defendants instruct NFI to adopt and implement to comply with the UPA are significant and would require NFI to incur significant administrative costs. *See* DE 15-6, Ex. E at UA00045 (describing procedures); DE 1, ¶ 70. Defendants also assert that because NFI is a New Jersey corporation located in New Jersey, the State's interest in protecting rightful owners is superior to NFI's administrative burdens to comply with the UPA. (DE 15-1, 21-22). However, the property Defendants seek to claim for New Jersey is property of owners with addresses in *other* states that, under the

primary rule, have "the right and power to escheat the debt" because the owner's address is in that state. *Delaware*, 507 U.S. at 498. Defendants ignore the fact that claiming customer credits of a motor carrier in violation of the ICCA affects out of state motor carriers doing business with New Jersey customers, not just New Jersey holders. All but a small amount of the property Defendants seek to claim here arises in transactions in interstate commerce. If Defendants can claim credits arising from transportation of property by a motor carrier and property over which other states have escheat authority, the impact on commerce is undeniably significant. In 2012 alone, the transportation industry generated $1.22 trillion in spending and represented 8.5% of annual gross domestic product ("GDP"). *See* Select USA, *Logistics and Transportation Industry in the United States*, available at http://selectusa.commerce.gov/industry-snapshots. Moreover, enforcement of the UPA to credits held by motor carriers would extend equally to credits held by airlines and railroads and thus has the potential to impact millions, if not billions, of dollars of spending affecting interstate commerce. NFI has established a *prima facie* case for violation of the Commerce Clause and is entitled to preliminary injunctive relief.

### B. Plaintiff Has Established That It Will Be Irreparably Harmed If Preliminary Injunctive Relief Does Not Issue

Defendants assert that NFI can pay the Assessments and then seek a refund or wait for Defendants to take enforcement action. (DE 15-1, at 1, 24, 25).

Defendants admit that NFI already tried repeatedly, and unsuccessfully, to obtain a remedy before and after the Assessments were issued. (DE 15-1, at 4-5; *see* DE 15-3, Exs. C, D, E and G). Defendants have already rejected NFI's objections, leaving an enforcement action as the only remaining option. Further, after raising issues with Defendants and asking for more time to review the Credits Assessment, Defendants penalized NFI by assessing more interest and have threatened to assess even more. (Andre Cert. ¶ 9). Irreparable harm exists where, as here, a plaintiff "must either face prosecution and fines for noncompliance [with the UPA] or turn over, in cash," the amount of the Assessments. *See N. J. Retail Merchants Ass'n*, 669 F.3d at 388. NFI cannot receive a refund of those funds if the UPA is later found to be preempted and/or unconstitutional, due to state sovereign immunity (*see id.* (internal citation omitted)), a defense Defendants assert here.

### C. A Balancing Of The Harms Favors Granting A Preliminary Injunction, Which Also Is In The Public Interest.

A balancing of the harms favors NFI because "the State 'does not have an interest in the enforcement of an unconstitutional law'" and/or a law that violates federal law. *See N.J. Retail Merchants Ass'n*, 669 F.3d at 388-89. (internal citations omitted). Defendants speculate that if "NFI . . .become[s] insolvent or file[s] for bankruptcy," the interests of it and other states will be at risk. (DE 15-1, at 8, 21, 27). However, that assertion is speculative and unsupported and should be disregarded. Moreover, the states' interests in the property are merely custodial,

14

and "'the public interest [is] not served by the enforcement of an unconstitutional law.'" *Id.*

### D. The Court Has Discretion To Waive A Bond

Defendants request that the Court order a bond if preliminary injunctive relief is granted. An exception to the bond requirement exists "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir.1990) (*quoting Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1145 (3d Cir.1977)); *see also Temple University v. White*, 941 F.2d 201, 219 (3d Cir. 1991) (quoting *Crowley v. Local No. 82, Furniture & Piano*, 679 F.2d 978 (1st Cir. 1982)). Here, Defendants merely take custody of property and thus have no risk of any direct monetary loss. If a bond is required, which NFI disputes, NFI requests a bond of not more than one percent of the total Assessments.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests preliminary injunctive relief against enforcement of the Assessments, interest and/or penalties.

                          **REED SMITH LLP**
                          Attorneys for Plaintiff

                          */s/ Kellie A. Lavery*
                          Kellie A. Lavery
                          Diane Green-Kelly (admitted *pro hac vice*)

Dated: July 22, 2015