```
                    UNITED STATES DISTRICT COURT          1
                    FOR THE DISTRICT OF NEW JERSEY
                    CIVIL ACTION NO. 15-3579 (FLW)


     _____  :
     NATIONAL FREIGHT, INC.,       : TRANSCRIPT OF SHOW
            Plaintiff,             : CAUSE HEARING FOR
                                   : PRELIMINARY
            v.                     : INJUNCTION
                                   :
     ANDREW P.SIDAMON-ERISTOFF     :
     et al.,                       : JULY 29, 2015
            Defendants             :
     _____    :
```

CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ


A P P E A R A N C E S:

REED SMITH, LLP
BY: DIANE GREEN-KELLY, ESQUIRE  (Illinois)
    KELLIE A. LAVERY, ESQUIRE
On behalf of the Plaintiff

OFFICE OF THE ATTORNEY GENERAL
STATE OF NEW JERSEY
BY: JONATHAN B. PEITZ, DEPUTY ATTORNEY GENERAL
On behalf of the Defendants


A L S O   P R E S E N T:

SCOTT E. BRUCKER, ESQUIRE
SENIOR VICE-PRESIDENT & GENERAL COUNSEL


                    * * * * *
              VINCENT RUSSONIELLO, CCR, CRR
               OFFICIAL U.S.COURT REPORTER
                    (609)588-9516

2

**C E R T I F I C A T E**

PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE

FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE

TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE

ABOVE-ENTITLED MATTER.

S/Vincent Russoniello
VINCENT RUSSONIELLO, CCR
OFFICIAL U.S. COURT REPORTER

3

```
 1              (In open court.)

 2              THE CLERK:  All rise.

 3              THE COURT:  Thank you.

 4              May I have the appearances, please.  For the

 5    plaintiff.

 6              MS. LAVERY:  Good morning, your Honor.

 7              Kellie Lavery from Reed Smith.  I'm here with

 8    my colleague Diane Green-Kelly who will be arguing

 9    this morning and our client Scott Brucker.

10              MR. PEITZ:  Good morning, your Honor.

11              Jonathan B. Peitz, Deputy Attorney General, on

12    behalf of the defendants.

13              And just so your Honor is aware, in the

14    courtroom today is Bob Davidson who is one of the

15    defendants.  He is sitting in the first row.

16              THE COURT:  Thank you.  You can feel free, if

17    he would like to sit with you, if you want him to sit

18    with you.

19              MR. PEITZ:  I think he's okay, your Honor.

20              THE COURT:  Okay.  Have a seat everyone.

21    Thank you.

22              Let me begin.  Obviously, there are several

23    bases on which the plaintiff has moved to enjoin the

24    State from escheating this property under the

25    Unclaimed Property Act.
```

4

1        First of all, let me start with, one of the

2  arguments that the State has made with regard to

3  sovereign immunity is only as to state law claims.

4  Correct?

5        MR. PEITZ:  Yes, your Honor.

6        THE COURT:  And I don't think you've really

7  responded to the state law claims.

8        MS. GREEN-KELLY:  No.

9        THE COURT:  Only sovereign immunity of course

10  doesn't apply to the injunctive relief you're arguing

11  as to the constitutional claims.

12        MS. GREEN-KELLY:  Correct.  And in terms of

13  the dollars, all of the dollars are subsumed in our

14  preemption and constitutional law claims.  So the

15  injunctive relief that we are requesting with or

16  without the state law claim is still -- would cover

17  the whole remainder of the assessment.

18        THE COURT:  I understand what your argument

19  is.  We are not addressing state law claims today.

20  Right?

21        MS. GREEN-KELLY:  Correct.

22        MR. PEITZ:  Yes, your Honor.

23        THE COURT:  All right.

24        So I'll deal with the priority arguments under

25  the Texas line of cases last because frankly that is

1   the one that has the traction to it.  I'm going to

2   start instead with the other arguments that have been

3   made that have taken up a fair amount of the briefing

4   with regard to federal preemption under the Interstate

5   Commerce Commission Termination Act known as the ICCA

6   and the commerce clause arguments that the plaintiff

7   has made in this case.

8           Now, first thing is -- is it Ms. Green-Kelly.

9           MS. GREEN-KELLY:  Yes.

10          THE COURT:  I have to say that I was a little

11   surprised by the fact that many of the arguments you

12   are making in this connection as to why you believe

13   there would be preemption which are based upon certain

14   factual representations that appear in your verified

15   complaint, and it is a verified complaint, but those

16   are conclusory allegations, and this is your burden on

17   a preliminary injunction to satisfy the Court,

18   statements such as, it is industry practice, without

19   any backup for it by certification or reference is not

20   going to do it.

21          Statements such as, many of our or most of our

22   contracts have an 18 to 24-month period by which

23   requests for refunds must be made, having a simple

24   statement in a verified complaint as to an allegation

25   as to that doesn't do it without providing me with any

1    contracts that actually show me language, and that's

2    this case, or telling me, in fact, how many contracts

3    we are talking about out of your total contracts and

4    how that could impact therefore rates.

5         So I have to say, I was a bit surprised by the

6    proofs that have been provided.  It's a different

7    argument on the priority arguments, but it's absent.

8         MS. GREEN-KELLY:  Your Honor, may I respond?

9         THE COURT:  Please.

10        MS. GREEN-KELLY:  Well, the defendants have

11   attached to the affidavit of Mr. Shah as Exhibit E a

12   copy of the report, the audit report, that supports

13   the credits and in that report they describe what

14   these are.

15        The bottom line is this, is they are all

16   credits that arise from customer payments for the

17   purchase of transportation and the nature of those

18   credits is what is at issue.

19        THE COURT:  Simply saying that isn't going to

20   do it for me.  On a likelihood of success under the

21   ICCA, I will tell you, I'm not buying it.  I've looked

22   at all of the cases.  Simply saying the fact they

23   happen to be credits doesn't show me why it would

24   preempt it under the statute which talks about, "a

25   state may not enact or enforce a law, regulation, or

7

1   other provision having the force and effect of law

2   related to a price, route, or service of any motor

3   carrier with respect to the transportation of

4   property."

5        I've looked at all of the cases.  I know you

6   relied on the Rowe case and a couple of those others.

7   They are not convincing me as to why this falls within

8   the ICCA provision.

9        The FAAAA contains the words "with respect to

10  the transportation of property."  It certainly limits

11  the scope of preemption.  This is dealing with -- I

12  know you are saying it relates to the services.  But

13  these are after the fact credits.

14       Looking at the Dan's City case -- and I can go

15  through all the cases with you.  But I'm simply

16  telling you, I understand what you are claiming that

17  they are.  It's a little bit confusing how it all

18  comes about frankly.  In some of the cases you may not

19  match up with an invoice because they pay before.

20  Whatever that means.  It's a little odd to me that you

21  can't match up a service with a payment being made

22  regardless of the invoice, but that's another thing.

23  That's for another day perhaps.

24       But all of these things, the fact that if

25  these are things that belong to the creditor, they are

8

1  refunds.  They are not yours.  You are saying it's all

2  built into the rates, et cetera.  I really don't have

3  anything to give me that conclusion.  What the case

4  law talks about is looking to the delivery of the

5  services or the setting of rates.

6       I frankly have nothing that would indicate to

7  me that those kinds of situations do affect your

8  rates.  Like I said, a mere allegation in a complaint,

9  even though verified in a conclusory fashion, is not

10  going to do it.

11       I have found in some of these cases certainly

12  things you would think would be much closer to it and

13  nonetheless they have found that they are not

14  preempted, down to the Dilts case which the Supreme

15  Court denied cert on now in 2015 out of the Ninth

16  Circuit where they talked about meal and rest breaks

17  and how that could factor into how prices are set, the

18  routes that they use, or the services they provide.

19       The Ninth Circuit said that it does not meet

20  the "related to" test just because it shifts

21  incentives and makes it more costly for motor carriers

22  to choose some routes or services relative to others,

23  and they were not preempted.  The Supreme Court denied

24  cert.

25       I can go through a number of others where your

9

1    analysis just doesn't on a likelihood of success fly.

2    But more importantly, as I've said, I can't tell you

3    at the end of the day if this goes through discovery

4    and where we are if you could be successful on a

5    likelihood of success and what you've provided me on

6    this record, absolutely not.

7              MS. GREEN-KELLY:  Your Honor, may I respond?

8              THE COURT:  Sure.

9              MS. GREEN-KELLY:  As I'll point out again, the

10   audit report for the credits provide the facts.  These

11   are the findings that the State actually --

12             THE COURT:  Which exhibit are you referencing?

13             MS. GREEN-KELLY:  It's Exhibit E to the Shah

14   declaration.  It's docket number 15-6.

15             THE COURT:  Which page would you like me to

16   look at?

17             MS. GREEN-KELLY:  Look at page 10 and it

18   starts in the long paragraph at the bottom.

19             So they are talking about the P credits, which

20   are the ones that are at issue here, and they are

21   saying that the P credits are unresolved items --

22   these are arising from accounts receivable, from

23   customer payments.

24             If you turn onto again carrying over to page

25   11, the credit is reclassified as a refund liability

and moved to an account.  These are potential refunds
if they, in fact, are owed to customers who purchase
transportation services which is what NFI offers.
That's what they offer.  They sell transportation
services.

So in the <u>Statland</u> case, for example, the
Seventh Circuit said that if it's refunds, it relates
to rates.  Here is the thing.  The ICCA deregulates.
It's different when you have --

THE COURT:  The <u>Statland</u> case that you are
referencing, those dealt with canceled ticket refunds,
and they said that they relate to rates, and they said
under the ADA states cannot regulate -- they are the
airlines, American Airlines -- ticket refund practices
by common law or by statute.

Indeed, in the <u>Statland</u> case, the Airline
Deregulation Act, the Supreme Court noted, and has
been noted elsewhere, is broader than the ICCA, in
that case we were dealing with breach of fiduciary
duty, violation of consumer fraud, et cetera.  I do
not find that that case is going to help you here, nor
do I find it convincing vis-à-vis the other cases.

It's your obligation, by the way, to show that
issuing these credits really is related ultimately to
your price setting.  You haven't done it.

1          What I've really told you today -- and I'm not

2    telling you, would you ever be able to convince me --

3    today is a preliminary injunction hearing.  It's a

4    likelihood of success hearing.  You have not given me

5    anything, anything to back this up other than the bald

6    allegation that it does affect it.  I don't have

7    analysis from you.  I don't have underlying

8    documentation.  I don't see how this has been done.

9          All the comments you make -- and this applies

10   to the Commerce Act clauses, as well, but there are

11   other arguments on the Commerce Act -- talk about

12   industry standards, any of these things, you haven't

13   told me about another company doing this.

14          I don't know why it appears the way it is.  As

15   I said, I don't know what you could produce in the

16   future, what you might do, but on this record it

17   doesn't do it.

18          MS. GREEN-KELLY:  Your Honor, a lot of this

19   goes to the fact that there is a derivative right

20   here.  The State doesn't have a direct right.  They

21   only have the right to take custody of what the

22   customer has.  The audit report identifies that these

23   are customer amounts.  These are amounts that

24   customers paid for transportation of services.  That's

25   the nature of what it is.

1       The State is now trying to essentially say, we

2   would like to take those refunds, potential refunds,

3   and give it back to NFI customers in violation of what

4   may be NFI's policies.

5       THE COURT:  Let me stop you right there.

6   That's the word you just said.  That may well be in

7   violation of NFI's policy.  Again, putting the words

8   may well be or what occurred, you haven't given me a

9   record to make that determination.

10      What I'm trying to tell you is, and it's clear

11  we are having a disconnect here, maybe the things that

12  you are saying could carry some weight, but I have

13  some questions about that, but factually might carry

14  some weight on some other argument, but you haven't

15  given me that.  You are arguing here but without the

16  proof behind it.  It is your burden on a preliminary

17  injunction hearing.  It's a drastic remedy.

18      MS. GREEN-KELLY:  The complaint is verified.

19  The facts in the complaint are verified by Gary

20  Nichols.

21      THE COURT:  I've said this to you.  That's it.

22  They are bald allegations.  I've gone to your verified

23  complaint.  They are verified.  Let's go through it

24  right now.  With nothing, again, backing them up and I

25  do not have to accept bald conclusions of factual

1    statements that are not backed up, and I've gone back

2    to the way they have been stated and that's all they

3    are.

4            For instance, I know you've cited to paragraph

5    70:  "If the amounts of customer credits are subject

6    to escheat generally, there will be a significant

7    impact on carrier rates because of lost revenue, as

8    well as increased cost of compliance with more than 50

9    state escheat laws, including administration costs,

10   additional personnel and accounting expenses to track

11   credits and conduct extensive additional due diligence

12   to resolve discrepancies involving thousands of

13   transactions."

14           Last sentence of that paragraph:  "The loss of

15   revenue and increased costs likely will result in

16   increased prices."

17           There is no meat to that allegation.  It has

18   not provided me any facts, any documents, any

19   calculations as to what the administration costs would

20   be, what kind of personnel would be required, what

21   additionally would be required, what kind of

22   accounting would have to be done, what is different,

23   what is this supposedly additional due diligence to

24   resolve discrepancies, none of that.

25           And then to say will likely result in

14

1   increased costs, again, this may be one of my first

2   cases for a preliminary injunction where I have no

3   certifications from the parties seeking the injunctive

4   relief, certifications that give further explanation

5   and attach the backup documentation and the

6   explanation.  I don't have it here.

7          So what I'm saying is, yes, I understand he

8   makes it.  Those are conclusions.  They are essential

9   arguments to me because they are in such a general,

10  general fashion.

11         Similarly, paragraph 69, that talks about

12  "...significant additional administrative costs

13  related to compliance, including sending due diligence

14  letters by certified mail with respect to hundreds of

15  credits," well, that doesn't tell me really what it

16  would cost, how many customers we are talking about

17  normally would be related to that, and that once you

18  kind of set up a system really what the additional

19  administrative burdens are, and the fact that there

20  may be some isn't the issue.

21         If you remember the American Express case --

22  we'll get to that because you'll really love that one

23  for the last argument on priority -- in there, in

24  fact, they demanded that at the point of sale there be

25  additional information taken which obviously American

1  Express argued, or the card purchaser said, it's an

2  additional burden, but we said too bad, so sad on

3  that.  That's what happens sometimes, additional

4  burdens.  There may be costs.  So your general

5  allegations without support aren't going to do it.

6  MS. GREEN-KELLY:  Your Honor, the preemption

7  argument for the ICCA is about a federal deregulation,

8  and the Supreme Court in Morales has said that as long

9  as it doesn't have -- if it's anything more than just

10  tenuous, it's preempted, and here what's happening is

11  the State is regulating them.  It's a deregulation

12  federal statute.

13  THE COURT:  I think the Supreme Court cases

14  and other cases do a little more than what you say,

15  and I think you are reading that pretty broadly

16  because then we go to what are the different

17  situations where this has occurred.

18  MS. GREEN-KELLY:  Well, for example, in Rowe

19  v. New Jersey Motor Transport Association that was a

20  statute that wasn't even regulating motor vehicles.

21  It was regulating tobacco retailers and telling them

22  what things they had to do to deliver and --

23  THE COURT:  No, no.  There it says -- what you

24  talk about there, though, is it did affect how the

25  delivery would occur.

1          MS. GREEN-KELLY:  But it was an indirect --

2     the statute itself was not regulating motor carriers.

3     It was regulating tobacco retailers, and the effect of

4     it was that the motor carrier was going to have to

5     confirm who the delivery was made to and to make sure

6     that they were 21-year old to receive tobacco.

7          It wasn't the statute that was even directed

8     at motor carriers, and yet the Supreme Court held that

9     there was preemption because it had the indirect

10    effect of requiring the motor carrier to do something

11    they might not want to do.

12         This is the same situation.  This is an

13    indirect effect, and under Morales and under Rowe an

14    indirect effect is a not, an indirect effect on how

15    NFI handles credits from customers.  It really doesn't

16    matter how many dollars they are going to spend.  For

17    the commerce clause claim maybe.  For the preemption

18    argument the amount of money, the exact amount of

19    money that it is going to cost is not relevant because

20    what's relevant is that it has an indirect effect on

21    rates.

22         THE COURT:  You haven't convinced me it has an

23    effect on rates.  That's part of the problem.  If you

24    look at the Dan's City case, which is a Supreme Court

25    2013 case which talks about, the law must concern a

17

1   motor carrier's transportation of property, and of

2   course defines transportation as services relating to

3   the movement of property, and there what occurred was

4   obviously the car once it had been towed was disposed

5   of.  And it says that that's not sufficiently

6   connected to a motor carriers's service with respect

7   to the transportation of property.

8          Obviously, here, it doesn't affect

9   transportation of property.  You are suggesting it

10  affect rates.  And what I'm telling you is, you have

11  not adequately represented to me on this record that

12  it does affect rates.

13         MS. GREEN-KELLY:  Because it affects refund

14  policies.

15         THE COURT:  Saying that statement alone

16  doesn't do it.  I'm sorry.  I reject your argument.

17  It has to have some sort of significant economic

18  effect and affecting rates, and you have not convinced

19  me that it does.

20         Similarly, if you look at the Seventh Circuit

21  case of Nationwide Freight Systems where that was

22  indeed a licensing statute, they said that the

23  economic effect, if there was one, would be

24  insignificant.

25         I cannot on this record -- merely saying that

18

1    it can have an effect, that's not what the law

2    requires, and you have not on this record shown me

3    that it would have more than an insignificant effect.

4    That's why I have to reject your argument as well.

5         On a likelihood of success, that's where we

6    are, you haven't done it.  There may be some arguments

7    you could make.  There may be some arguments you could

8    make even on what your contracts are.  I don't even

9    have the contracts to look at them.

10         Next, turning to your commerce clause

11    argument, I don't think you've made any showing of an

12    effect on interstate commerce, nor could I find on

13    this record you've shown an incidental effect on

14    interstate customers.  So I'm not accepting the

15    commerce argument.

16         I do want to now turn to the Texas priority

17    arguments.  It's your turn, Mr. Peitz, because you are

18    on the ropes on this one.

19         MR. PEITZ:  Good morning, your Honor.

20         THE COURT:  Good morning.

21         So all we are talking about here is, because

22    obviously I've determined that you haven't made a

23    showing with regard to the ICCA or the commerce

24    clause, any of the in-state escheat is not going to be

25    the issues on the Texas priority.

1          MR. PEITZ:  Yes, your Honor.

2          THE COURT:  What we are talking about is

3    out-of-state creditors.  Now, the question I have here

4    is, what I understood is, virtually all of them have

5    last known addresses.  Is that correct?

6          MS. GREEN-KELLY:  Yes.

7          THE COURT:  Okay.

8          MR. PEITZ:  With respect to whether the

9    records were available, they had the last known

10   addresses, there was a large estimated period where it

11   was presumed there were no addresses.  So all the

12   amounts were taken for New Jersey.

13         THE COURT:  We'll break this up.  For which

14   last known addresses are known.  We also know every

15   state has an escheat statute now.  Correct?

16         MR. PEITZ:  Yes, your Honor.

17         THE COURT:  Okay.  I don't know how you get

18   past the first priority rule.

19         MR. PEITZ:  Well, your Honor, the State is

20   taking under the second priority.

21         THE COURT:  I know you are.  You don't get to

22   the second is what I'm saying.  How do you even get to

23   the second when under the first priority rule you have

24   a last known address?  That's supposed to be the end

25   of it, and the last known address, and that there is

1   an escheat statute.

2        As you know, as the Third Circuit said in the

3   American Express case, the right to escheat is also

4   the right to decide not to escheat a particular kind

5   of property.  So to the extent that some of these

6   states either have dormancy periods that are

7   different, have periods that kind of toll the escheat

8   while they are still in the business-to-business

9   relationship or other things, or simply choose not to

10  act, the fact that they have an escheat statute and

11  the last known address is known, that's the end of the

12  inquiry.  You stop at Step 1.  You never go to Step 2.

13       MR. PEITZ:  Well, your Honor, the Step 1, if

14  the first state does not escheat or their laws do not

15  escheat that property, if they have an exception made

16  for that property, then the second state has the

17  authority to take that property because they have

18  sovereign rights over the -- what the Courts have

19  called -- the other party to the transportation.

20       THE COURT:  Where anywhere in the law have you

21  found something that supports that statement that the

22  fact that a state has an escheat law, but has decided

23  not to act on it or has decided to exempt a particular

24  kind of property, now throws you into the second

25  priority rule?

1         I don't know of any.  And frankly if you read

2    the American Express case, the Third Circuit opinion,

3    put aside my own, you don't get there.

4         MR. PEITZ:  Well, your Honor, it's the

5    language of the Texas case.  When they are determining

6    what the first priority is, what the second priority

7    is, and how you get to the second priority, they say

8    if the first state does not escheat that property, you

9    move to the second state --

10        THE COURT:  They don't say that property.  I

11   think it's the fact that they don't escheat.  At some

12   period of time there were many states that didn't have

13   escheat statutes.  When those cases were decided,

14   there were not 50 states with escheat statutes.

15   That's a more modern concept that they've all done

16   that now.  So they were looking at if you are dealing

17   with a state that does not have an escheat practice.

18        That's why you get the language in the Third

19   Circuit.  By the way, we are still on the Third

20   Circuit.  That's why you get the law in the Third

21   Circuit that said the power to escheat is also the

22   power to decide not to escheat.  And what they are

23   talking about is not to escheat a certain kind of

24   property, not if you don't have an escheat statute.

25   If you don't have an escheat statute, the Circuit

1    would agree, okay, now, you are open.  You go to Step

2    2.

3            MR. PEITZ:  I believe the Third Circuit, your

4    Honor, was discussing when the second priority state

5    does not escheat, because in the cases, the American

6    Express, New Jersey Retail Merchants was a question

7    about whether or not a third priority --

8            THE COURT:  You really ended up in the wrong

9    place, didn't you, the Judge who decided those and

10   wrote it?  I think I kind of know what happened.  So

11   go ahead.

12           MR. PEITZ:  I understand, your Honor.

13           The issue in that case was whether or not a

14   third priority would be created which would take away

15   from the second priority state authority to escheat or

16   not escheat that property.

17           The state of first priority has the first shot

18   to take that.  But if they make the determination not

19   to, the second state, because they still have

20   sovereign rights over that company that's incorporated

21   in New Jersey in this case, still have the authority

22   over the sovereignty over that company to take that

23   property since they are the other party to the

24   transportation.  They are the creditor state.

25           So if the debtor state makes that

23

 1    determination, it doesn't take away from the second

 2    priority state's authority.  It just simply allows

 3    that state to make that call.

 4         The purpose behind saying that a state has the

 5    right not to escheat, the Court was saying, well,

 6    because states may want to bring companies into their

 7    state.  They want to entice companies to come in

 8    because we don't escheat this property.

 9         To have a state such as, I was going to say,

10    Arizona that may not have that escheat statute that

11    covers the property, there is no enticement to bring a

12    company in if they decide not to as a state of last

13    known address.  That purpose only comes in for the

14    state of incorporation because they want to entice a

15    company to come into their state and say, if you come

16    in here under the second priority, you won't have to

17    turn it over.

18         That's what they were discussing.  The states

19    still have their sovereign rights over NFI.  We are

20    taking the property under the second priority because

21    the Texas case did say, when the first state doesn't

22    escheat the property, the property, they were very

23    specific, and that's why I believe that the second

24    state, in this case, New Jersey, still has the

25    authority to take this property.

24

1          THE COURT:  Let me hear from Ms. Green-Kelly.

2          MS. GREEN-KELLY:  The problem with the

3     argument is the Western Union v. Pennsylvania case

4     which led to the priority rules, in Western Union

5     there was a judgment by a Pennsylvania State Court

6     against Western Union to escheat unclaimed money

7     orders that had been sold in Pennsylvania.

8          The Supreme Court reversed that judgment

9     because the Court said the Pennsylvania Court has no

10    jurisdiction over other states that may claim it and

11    the potential owners possibly exposing Western Union

12    to multiple liability which would be a due process

13    right violation.

14          In Texas v. New Jersey the Court starts out by

15    saying, hey, the reason we are allowing original

16    jurisdiction here is because we held in Western Union

17    v. Pennsylvania that we would be exposing companies to

18    multiple liability if everybody wasn't under the same

19    jurisdiction of the Court to decide the rights.

20          The problem with what counsel is saying and

21    New Jersey's position is, is that if New Jersey can

22    take the property under the secondary rule, even

23    though another state already has the priority

24    authority, and the Third Circuit has said that that

25    right, the primary rule right exists regardless of

1   what that state decides to do with it, as long as they

2   have an escheat statute, you are ending up with a

3   situation where what if the other state changes their

4   law and now they are wanting the property back?

5         If there is a judgment in New Jersey asking

6   NFI to send that property over to New Jersey, the

7   other states, especially the ones that have B to B

8   exemptions, they are not going to come to New Jersey

9   and get it.  But NFI is now having to escheat it to

10  another state.  It isn't consistent with the priority

11  rules which are designed to bring the property to the

12  state closest to the owner.  The owner is in some

13  other state and they are not looking in New Jersey for

14  this property.  It's not even consistent with the

15  policies underlying the priority rules.

16        The bottom line is that the Texas v. New

17  Jersey case makes clear, and your Honor is correct, at

18  the time of Texas v. New Jersey in 1965 not all states

19  had escheat statutes, and so the second prong of that

20  secondary rule was designed to deal with that

21  situation.  But if property is supposed to escheat to

22  the state closest to the owner, then it certainly

23  couldn't possibly mean that it goes to New Jersey if

24  the person is in Arizona.

25        In Arizona, for example, the statute is that

1   if it's a business-to-business transaction, the

2   dormancy period is merely tolled.  It's not even an

3   exemption.  It just says that the property doesn't

4   become dormant until the parties stop engaging in a

5   business-to-business relationship.  So New Jersey is

6   trying to take that property even though some day it

7   may be escheatable to Arizona.

8         The bottom line is that the priority rules are

9   substantive rules and the primary rule fails only if

10  the holder lacks addresses, that's not the case here,

11  and if the other state doesn't have an escheat

12  statute, and that is not this case here.

13        THE COURT:  I think the Third Circuit, Mr.

14  Peitz, is very clear in its decision in talking about

15  even though there may be potential windfall to the

16  debtor.  Here it would be NFI.  There it was the FCC

17  issuers.  That's not the concern.

18        If you follow the trilogy of those three

19  Supreme Court cases, the whole point was, we don't

20  want to have different factual situations determining

21  how things come out and having these kinds of

22  arguments on a constant basis.  So they made two

23  priority rules that were very clear and we are

24  supposed to be following them.

25        And you really do want to carve out another

1    niche of saying, okay, but if you've got an escheat

2    statute, but the escheat statute is worded in a

3    certain way that could exempt this property so that

4    you have no interest in it, or you haven't actually

5    taken any action, then we can step in.

6         There is no such carve-out that was created in

7    those priority rules for those decisions by states

8    that may decide if you are in a business-to-business

9    relationship we are not going to collect from you.

10   We'll have certain dormancy periods that may be

11   different than yours.  That they may do so because it

12   remains under the first rule it is their right to

13   escheat or not to escheat.

14        I do find, therefore, that on this issue as to

15   dealing with out-of-state debtors, customers, whatever

16   they are, payroll people, I don't know who they are at

17   this point, for which last known addresses exist, then

18   a likelihood of success has been established as to

19   that area.

20        Now, let's talk about what else we've got here

21   that doesn't fall within that.  We've got apparently a

22   category for which documents simply don't exist.  Is

23   that correct?

24        MR. PEITZ:  Yes, your Honor.

25        THE COURT:  No longer.  As to those --

1          MS. GREEN-KELLY:  Your Honor, can I address

2     those?

3          THE COURT:  Yes, please.

4          MS. GREEN-KELLY:  So Delaware v. New York

5     defined sort of expanded and said the priority rule is

6     a three-step process.  The first step is consistent

7     with the derivative rights doctrine and it says first

8     you have to identify the property, and the property is

9     defined by whether there is a state law that has

10    given -- and this is because it's intangible property,

11    whether someone has the right and obligation, a

12    property interest in being paid for something.

13          To the extent that the State is asserting that

14    the amounts that they are estimating is property, that

15    is contrary to the priority rules and is preempted.

16    To the extent, however, that they are asserting it is

17    a penalty for failure to keep records, then it is a

18    penalty.

19          That will matter because we are going to be

20    filing an amended complaint either today or tomorrow

21    that will remove the state law claim, but will be

22    replaced with a federal claim that will go to these

23    issues.  To the extent it is simply a penalty, then it

24    is not unclaimed property and it isn't necessarily

25    preempted by the priority rules.

1          So the real question -- and I've been having a

2     discussion with counsel this morning.  He says the

3     estimate is an estimate of unclaimed property.  In

4     that case it's preempted.

5          MR. PEITZ:  Your Honor, a couple of points.

6     The first is that the state law at issue, what it says

7     is, if you don't have records -- you are required to

8     keep records.  If you don't, we have to make a

9     reasonable estimate of what the property is because we

10    can't know.  You don't have records.

11         They can't use it as both a sword and a shield

12    to say, well, we don't have records.  So you should

13    presume that some of these are out of state.  But at

14    the same time we are not going to keep records, so,

15    well, yeah, you can't do that either.  They are trying

16    to use it two different ways to get around the fact

17    that they didn't keep records.

18         Whether or not this estimate includes

19    property, whether it's something else, that is a state

20    law issue.  The state law says it has to be

21    reasonable.  That's going to be a determination by the

22    State Courts because under the 11th Amendment they can

23    only get a preliminary injunction for a violation of

24    federal law.  But the determination of what the amount

25    is that's reasonable or not reasonable is a question

1    for the State Court to determine.

2            THE COURT:  The problem I'm having here is,

3    and dealing with this in the context of the priority

4    rules we are discussing is, I know that there is major

5    dispute as to how they came up with their estimate and

6    what that is.  And I know you are going to also argue

7    whether you think it's a penalty, an estimate, or

8    whatever, and there may be other due process arguments

9    you want to make in that regard.  That's not what I

10   have today.  That's the problem with that.

11           I don't know that I can adequately deal with

12   this as a preemption of priority argument at this

13   point without actually getting into how the estimates

14   are being calculated and whether it's something that

15   could be attacked at this stage or not.  I really

16   don't.

17           Because if you want to go back and say, and

18   you think the method should be, while looking at the

19   years surrounding that for which we have records,

20   80 percent of them dealt with out-of-state and

21   20 percent were in-state, or whatever, and you want to

22   make that argument, I don't any basis to do that at

23   this point and to say that's how they should go about

24   doing it, and I don't know that you have any basis to

25   determine that either.

1          This is one of those situations where,

2     frankly, if there are no records, I don't even know

3     what we are talking about by way of escheat of

4     property, of intangible property, because we don't

5     know that anything existed.  But I understand the

6     stature is written in an estimate.

7          I don't think today is my day to determine

8     whether I can rule on what that means and whether it

9     should be enjoined and I definitely will need more on

10    that.  So at this point I just don't feel that I can,

11    that I have a likelihood of success as to how that's

12    going to come out.

13         MS. GREEN-KELLY:  And, your Honor, because we

14    are going to be amending the complaint to add a due

15    process claim concerning that issue.

16         THE COURT:  I thought that's what I should

17    have seen.  I didn't have that argument and I didn't

18    have it in the complaint.

19         MS. GREEN-KELLY:  And I guess what I'd be

20    asking since we will file that complaint today is

21    whether we can also seek a preliminary injunction and

22    brief that issue to be able to at least toll this

23    until we can brief it on an expedited basis.

24         THE COURT:  You don't really mean a

25    preliminary injunction.  What you are really asking is

32

1   the same way I did on the order to show cause and just

2   to say that I restrain you until I can hear the

3   argument on it.

4           MS. GREEN-KELLY:  Yes.

5           MR. PEITZ:  Your Honor, the amended complaint

6   hasn't been filed yet.

7           THE COURT:  I understand.

8           MR. PEITZ:  I don't even know what they are

9   really asking for until I see the amended complaint.

10          THE COURT:  I understand.

11          MR. PEITZ:  There may be an 11th Amendment

12  problem with what they are asking for if it is really

13  a state law issue.

14          THE COURT:  I can't give you that until we see

15  what the complaint looks like.  Obviously, you are

16  going to make your application with it.

17          Let me also tell you right now, I'm here

18  today, tomorrow, and Friday, and I'm gone next week on

19  vacation.  So if you don't have it in by Friday, I'm

20  not seeing it for another week.

21          MS. GREEN-KELLY:  We will have it in today.

22          THE COURT:  I'll wait and see it.  I don't

23  think they are going to be taking action today anyway.

24  I can't deal with that issue until that's there.  So

25  at this moment I can't enjoin those estimates.

1          Now, let's get to the other factors of the

2     preliminary injunction, in any event.

3          MR. PEITZ:  Your Honor, I just want to say,

4     since you had already found that on two of the

5     plaintiff's claims they cannot get a preliminary

6     injunction, if there is an injunction issued it should

7     be a very narrow one just covering the alleged

8     offending amounts and not the remaining parts of the

9     assessment.

10          THE COURT:  I think I knew that.

11          MR. PEITZ:  Okay.  I just wanted to be sure,

12     your Honor.

13          THE COURT:  It will be limited.  I haven't

14     gotten to the last factors.

15          MR. PEITZ:  Yes, your Honor.  I apologize.

16          THE COURT:  Have a seat for a moment.

17          I think we can easily deal with those as well.

18     And now we are only dealing with the assessments that

19     relate to the out-of-state owners for whom last known

20     addresses are known, whatever those categories may be,

21     and that's the part we are looking to enjoin.

22          Now, on irreparable harm, the same argument is

23     being made by the plaintiff as was made obviously in

24     the American Express case which is based on sovereign

25     immunity doctrines.  You cannot bring suit to recover

1   these if you had to pay them currently.

2          Mr. Peitz, your arguments about that there's

3   some process in the state by which you can object,

4   frankly, some of this has already occurred.  They

5   would have to be defending the lawsuit, arguing it

6   there, and if they lose at that level for whatever

7   reason paying it over before I've had an opportunity

8   to make the appropriate constitutional determinations,

9   and they wouldn't be able to file a separate lawsuit.

10          That is not the kind of thing it's talking

11   about.  It's really the same exact argument as in the

12   American Express case.  So I can find irreparable harm

13   because they would not be able to file a separate suit

14   to recover.

15          Looking at the balancing of the harms here,

16   essentially the State is saying, well, we don't have

17   the use of this money.  Argument could be made in

18   every one of these cases and obviously I know what the

19   harm is to the plaintiff.

20          Frankly, on this record similar to, as I said,

21   the other escheat case that we decided, I would find

22   that the factors were satisfied and provide a

23   preliminary injunction only as to the category that I

24   have identified at this time without seeing what else

25   you might find and file.

35

1      So I think that resolves what we have today.

2  Is that correct?

3      MR. PEITZ:  Just the issue of the bond, your

4  Honor.

5      THE COURT:  I have the arguments.  A bond is

6  appropriate in these cases.  It's the exception not to

7  provide one.  One of the arguments being made

8  obviously by the plaintiff was the argument that there

9  really is not a monetary damage to the State.

10      I know that I did impose a bond in the

11  American Express.  It was relatively a small amount.

12  Frankly, I can't even remember what it was.

13      This is not going to be to post a bond for the

14  full amount.  No, it's not.  And, frankly, I don't

15  have any arguments that would indicate we are not

16  going to find National Freight sometime in the future.

17  They are a rather large company.  I don't even know

18  now what the amounts are that we are talking about for

19  the category for which I am granting the preliminary

20  injunction.

21      What are the amounts?  Do we have any idea of

22  what the entire amount is?

23      MS. GREEN-KELLY:  Well, your Honor, certainly

24  the one that is about $293,000 is entirely addressed

25  property to other states.  The $242,000 amount we are

1    going to have to go look at it, and also some of it

2    has been paid already.

3        With respect to the credits, we have to go and

4    look to see how much.  But certainly a lot of their

5    business is outside of New Jersey.

6        MR. PEITZ:  Your Honor, very briefly.

7        The number that plaintiff's counsel is

8    discussing is on Exhibit D to the Prashant Shah

9    certification.

10       THE COURT:  Just give me a basic idea what the

11   numbers are.

12       MR. PEITZ:  There is a column for items with

13   address in exempt states, and also a column for items

14   with address in conditionally exempt states.  That

15   amount is $21,225.56 plus $194.  Those are the amounts

16   where the addresses were known.  There is also an

17   amount for an estimated liability.

18       THE COURT:  I'm not enjoining the estimated

19   liability.

20       MR. PEITZ:  Yes, I understand.  But that's the

21   other column.

22       So in this case, there is those amounts, plus

23   statutory interest is continuing to accrue.  This

24   particular assessment was estimated through 2013.  So

25   it has been accruing a long time.  So the amount of

37

1    the bond should be consistent with those amounts, plus

2    interest.

3          THE COURT:  What are the amounts?

4          MR. PEITZ:  21,000, plus statutory interest

5    such as prime plus 10%.  I'm not sure.  I have to

6    discuss with the client what that amount actually

7    would be.  I'm not prepared right now to specify what

8    that amount would be.

9          THE COURT:  I'm imposing a very, very modest

10   bond in this case.  Post a bond for $10,000.  The

11   amounts are not great here, and I'm not concerned

12   about whether in the end they will be able to pay.

13         With that, we'll enter a limited preliminary

14   injunction order.

15         I would like to see counsel in chambers,

16   please.

17         Thank you.

18         THE CLERK:  All rise.

19         (Proceedings concluded.)

20

21

22

23

24

25

38

# C E R T I F I C A T E

I, **Vincent Russoniello,** Official United States Court Reporter and Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

**$**

**$10,000** [1] - 37:10
**$194** [1] - 36:15
**$21,225.56** [1] - 36:15
**$242,000** [1] - 35:25
**$293,000** [1] - 35:24

**0**

**08608** [1] - 1:10

**1**

**1** [2] - 20:12, 20:13
**10** [1] - 9:17
**10%** [1] - 37:5
**11** [1] - 9:25
**11th** [2] - 29:22, 32:11
**15-3579** [1] - 1:2
**15-6** [1] - 9:14
**18** [1] - 5:22
**1965** [1] - 25:18

**2**

**2** [2] - 20:12, 22:2
**20** [1] - 30:21
**2013** [2] - 16:25, 36:24
**2015** [2] - 1:6, 8:15
**21,000** [1] - 37:4
**21-year** [1] - 16:6
**24-month** [1] - 5:22
**28** [1] - 2:10
**29** [1] - 1:6

**4**

**402** [1] - 1:10

**5**

**50** [2] - 13:8, 21:14

**6**

**609)588-9516** [1] - 1:25
**675** [1] - 38:24
**69** [1] - 14:11

**7**

**70** [1] - 13:5
**753** [1] - 2:10

**8**

**80** [1] - 30:20

**A**

**able** [5] - 11:2, 31:22, 34:9, 34:13, 37:12
**ABOVE** [1] - 2:13
**ABOVE-ENTITLED** [1] - 2:13
**absent** [1] - 6:7
**absolutely** [1] - 9:6
**accept** [1] - 12:25
**accepting** [1] - 18:14
**account** [1] - 10:1
**accounting** [2] - 13:10, 13:22
**accounts** [1] - 9:22
**accrue** [1] - 36:23
**accruing** [1] - 36:25
**accurate** [1] - 38:9
**ACCURATE** [1] - 2:11
**act** [2] - 20:10, 20:23
**Act** [5] - 3:25, 5:5, 10:17, 11:10, 11:11
**action** [4] - 27:5, 32:23, 38:15, 38:17
**ACTION** [1] - 1:2
**ADA** [1] - 10:13
**add** [1] - 31:14
**additional** [8] - 13:10, 13:11, 13:23, 14:12, 14:18, 14:25, 15:2, 15:3
**additionally** [1] - 13:21
**address** [7] - 19:24, 19:25, 20:11, 23:13, 28:1, 36:13, 36:14
**addressed** [1] - 35:24
**addresses** [8] - 19:5, 19:10, 19:11, 19:14, 26:10, 27:17, 33:20, 36:16
**addressing** [1] - 4:19
**adequately** [2] - 17:11, 30:11
**administration** [2] - 13:9, 13:19
**administrative** [2] - 14:12, 14:19
**affect** [6] - 8:7, 11:6, 15:24, 17:8, 17:10, 17:12
**affecting** [1] - 17:18
**affects** [1] - 17:13
**affidavit** [1] - 6:11
**agree** [1] - 22:1

**ahead** [1] - 22:11
**Airline** [1] - 10:16
**airlines** [1] - 10:14
**Airlines** [1] - 10:14
**al** [1] - 1:7
**allegation** [4] - 5:24, 8:8, 11:6, 13:17
**allegations** [3] - 5:16, 12:22, 15:5
**alleged** [1] - 33:7
**allowing** [1] - 24:15
**allows** [1] - 23:2
**alone** [1] - 17:15
**amended** [3] - 28:20, 32:5, 32:9
**amending** [1] - 31:14
**Amendment** [2] - 29:22, 32:11
**American** [9] - 10:14, 14:21, 14:25, 20:3, 21:2, 22:5, 33:24, 34:12, 35:11
**amount** [13] - 5:3, 16:18, 29:24, 35:11, 35:14, 35:22, 35:25, 36:15, 36:17, 36:25, 37:6, 37:8
**amounts** [13] - 11:23, 13:5, 19:12, 28:14, 33:8, 35:18, 35:21, 36:15, 36:22, 37:1, 37:3, 37:11
**AN** [1] - 2:11
**analysis** [2] - 9:1, 11:7
**ANDREW** [1] - 1:6
**anyway** [1] - 32:23
**apologize** [1] - 33:15
**appear** [1] - 5:14
**appearances** [1] - 3:4
**application** [1] - 32:16
**applies** [1] - 11:9
**apply** [1] - 4:10
**appropriate** [2] - 34:8, 35:6
**area** [1] - 27:19
**argue** [1] - 30:6
**argued** [1] - 15:1
**arguing** [4] - 3:8, 4:10, 12:15, 34:5
**argument** [19] - 4:18, 6:7, 12:14, 14:23, 15:7, 16:18, 17:16, 18:4, 18:11, 18:15, 24:3, 30:12, 30:22, 31:17, 32:3, 33:22, 34:11,

34:17, 35:8
**arguments** [17] - 4:2, 4:24, 5:2, 5:6, 5:11, 6:7, 11:11, 14:9, 18:6, 18:7, 18:17, 26:22, 30:8, 34:2, 35:5, 35:7, 35:15
**arise** [1] - 6:16
**arising** [1] - 9:22
**Arizona** [4] - 23:10, 25:24, 25:25, 26:7
**aside** [1] - 21:3
**asserting** [2] - 28:13, 28:16
**assessment** [3] - 4:17, 33:9, 36:24
**assessments** [1] - 33:18
**Association** [1] - 15:19
**attach** [1] - 14:5
**attached** [1] - 6:11
**attacked** [1] - 30:15
**attorney** [2] - 38:14, 38:16
**Attorney** [1] - 3:11
**ATTORNEY** [2] - 1:17, 1:18
**audit** [3] - 6:12, 9:10, 11:22
**authority** [6] - 20:17, 22:15, 22:21, 23:2, 23:25, 24:24
**available** [1] - 19:9
**aware** [1] - 3:13

**B**

**backed** [1] - 13:1
**backing** [1] - 12:24
**backup** [2] - 5:19, 14:5
**bad** [1] - 15:2
**balancing** [1] - 34:15
**bald** [3] - 11:5, 12:22, 12:25
**based** [2] - 5:13, 33:24
**bases** [1] - 3:23
**basic** [1] - 36:10
**basis** [4] - 26:22, 30:22, 30:24, 31:23
**BE** [1] - 2:11
**become** [1] - 26:4
**begin** [1] - 3:22
**behalf** [3] - 1:16, 1:18, 3:12
**behind** [2] - 12:16, 23:4

**belong** [1] - 7:25
**bit** [2] - 6:5, 7:17
**Bob** [1] - 3:14
**bond** [7] - 35:3, 35:5, 35:10, 35:13, 37:1, 37:10
**bottom** [4] - 6:15, 9:18, 25:16, 26:8
**breach** [1] - 10:19
**break** [1] - 19:13
**breaks** [1] - 8:16
**brief** [2] - 31:22, 31:23
**briefing** [1] - 5:3
**briefly** [1] - 36:6
**bring** [4] - 23:6, 23:11, 25:11, 33:25
**broader** [1] - 10:18
**broadly** [1] - 15:15
**BRUCKER** [1] - 1:21
**Brucker** [1] - 3:9
**built** [1] - 8:2
**burden** [3] - 5:16, 12:16, 15:2
**burdens** [2] - 14:19, 15:4
**business** [9] - 20:8, 26:1, 26:5, 27:8, 36:5
**business-to-business** [4] - 20:8, 26:1, 26:5, 27:8
**buying** [1] - 6:21
**BY** [2] - 1:15, 1:18

**C**

**calculated** [1] - 30:14
**calculations** [1] - 13:19
**canceled** [1] - 10:11
**cannot** [4] - 10:13, 17:25, 33:5, 33:25
**car** [1] - 17:4
**card** [1] - 15:1
**carrier** [4] - 7:3, 13:7, 16:4, 16:10
**carrier's** [1] - 17:1
**carriers** [3] - 8:21, 16:2, 16:8
**carriers's** [1] - 17:6
**carry** [2] - 12:12, 12:13
**carrying** [1] - 9:24
**carve** [2] - 26:25, 27:6
**carve-out** [1] - 27:6
**case** [32] - 5:7, 6:2, 7:6, 7:14, 8:3, 8:14, 10:6,

10:10, 10:16, 10:19, 10:21, 14:21, 16:24, 16:25, 17:21, 20:3, 21:2, 21:5, 22:13, 22:21, 23:21, 23:24, 24:3, 25:17, 26:10, 26:12, 29:4, 33:24, 34:12, 34:21, 36:22, 37:10
**cases** [15] - 4:25, 6:22, 7:5, 7:15, 7:18, 8:11, 10:22, 14:2, 15:13, 15:14, 21:13, 22:5, 26:19, 34:18, 35:6
**categories** [1] - 33:20
**category** [3] - 27:22, 34:23, 35:19
**CAUSE** [1] - 1:4
**CCR** [3] - 1:24, 2:17, 38:24
**cert** [2] - 8:15, 8:24
**certain** [4] - 5:13, 21:23, 27:3, 27:10
**certainly** [5] - 7:10, 8:11, 25:22, 35:23, 36:4
**Certificate** [1] - 38:24
**certification** [2] - 5:19, 36:9
**certifications** [2] - 14:3, 14:4
**CERTIFIED** [1] - 2:11
**Certified** [1] - 38:7
**certified** [1] - 14:14
**certify** [2] - 38:8, 38:13
**cetera** [2] - 8:2, 10:20
**chambers** [1] - 37:15
**changes** [1] - 25:3
**choose** [2] - 8:22, 20:9
**Circuit** [13] - 8:16, 8:19, 10:7, 17:20, 20:2, 21:2, 21:19, 21:20, 21:21, 21:25, 22:3, 24:24, 26:13
**cited** [1] - 13:4
**City** [2] - 7:14, 16:24
**CIVIL** [1] - 1:2
**claim** [6] - 4:16, 16:17, 24:10, 28:21, 28:22, 31:15
**claiming** [1] - 7:16
**claims** [6] - 4:3, 4:7, 4:11, 4:14, 4:19, 33:5
**CLARKSON** [1] - 1:10
**clause** [4] - 5:6, 16:17,

18:10, 18:24
**clauses** [1] - 11:10
**clear** [4] - 12:10, 25:17, 26:14, 26:23
**CLERK** [2] - 3:2, 37:18
**client** [2] - 3:9, 37:6
**closer** [1] - 8:12
**closest** [2] - 25:12, 25:22
**colleague** [1] - 3:8
**collect** [1] - 27:9
**column** [3] - 36:12, 36:13, 36:21
**comments** [1] - 11:9
**Commerce** [3] - 5:5, 11:10, 11:11
**commerce** [6] - 5:6, 16:17, 18:10, 18:12, 18:15, 18:23
**Commission** [1] - 5:5
**common** [1] - 10:15
**companies** [3] - 23:6, 23:7, 24:17
**company** [6] - 11:13, 22:20, 22:22, 23:12, 23:15, 35:17
**complaint** [14] - 5:15, 5:24, 8:8, 12:18, 12:19, 12:23, 28:20, 31:14, 31:18, 31:20, 32:5, 32:9, 32:15
**compliance** [2] - 13:8, 14:13
**concept** [1] - 21:15
**concern** [2] - 16:25, 26:17
**concerned** [1] - 37:11
**concerning** [1] - 31:15
**concluded** [1] - 37:19
**conclusion** [1] - 8:3
**conclusions** [2] - 12:25, 14:8
**conclusory** [2] - 5:16, 8:9
**conditionally** [1] - 36:14
**conduct** [1] - 13:11
**confirm** [1] - 16:5
**confusing** [1] - 7:17
**connected** [1] - 17:6
**connection** [1] - 5:12
**consistent** [4] - 25:10, 25:14, 28:6, 37:1
**constant** [1] - 26:22
**constitutional** [3] - 4:11,

4:14, 34:8
**consumer** [1] - 10:20
**contains** [1] - 7:9
**context** [1] - 30:3
**continuing** [1] - 36:23
**contracts** [6] - 5:22, 6:1, 6:2, 6:3, 18:8, 18:9
**contrary** [1] - 28:15
**convince** [1] - 11:2
**convinced** [2] - 16:22, 17:18
**convincing** [2] - 7:7, 10:22
**copy** [1] - 6:12
**correct** [8] - 4:4, 4:12, 4:21, 19:5, 19:15, 25:17, 27:23, 35:2
**cost** [3] - 13:8, 14:16, 16:19
**costly** [1] - 8:21
**costs** [6] - 13:9, 13:15, 13:19, 14:1, 14:12, 15:4
**COUNSEL** [1] - 1:21
**counsel** [6] - 24:20, 29:2, 36:7, 37:15, 38:14, 38:16
**couple** [2] - 7:6, 29:5
**course** [2] - 4:9, 17:2
**Court** [19] - 5:17, 8:15, 8:23, 10:17, 15:8, 15:13, 16:8, 16:24, 23:5, 24:5, 24:8, 24:9, 24:14, 24:19, 26:19, 30:1, 38:7
**COURT** [50] - 1:1, 2:18, 3:3, 3:16, 3:20, 4:6, 4:9, 4:18, 4:23, 5:10, 6:9, 6:19, 9:8, 9:12, 9:15, 10:10, 12:5, 12:21, 15:13, 15:23, 16:22, 17:15, 18:20, 19:2, 19:7, 19:13, 19:17, 19:21, 20:20, 21:10, 22:8, 24:1, 26:13, 27:25, 28:3, 30:2, 31:16, 31:24, 32:7, 32:10, 32:14, 32:22, 33:10, 33:13, 33:16, 35:5, 36:10, 36:18, 37:3, 37:9
**court** [1] - 3:1
**COURTHOUSE** [1] - 1:10
**courtroom** [1] - 3:14
**Courts** [2] - 20:18, 29:22
**cover** [1] - 4:16

covering [1] - 33:7
covers [1] - 23:11
created [2] - 22:14, 27:6
credit [1] - 9:25
creditor [2] - 7:25, 22:24
creditors [1] - 19:3
credits [14] - 6:13, 6:16,
6:18, 6:23, 7:13, 9:10,
9:19, 9:21, 10:24, 13:5,
13:11, 14:15, 16:15,
36:3
CRR [1] - 1:24
custody [1] - 11:21
customer [5] - 6:16,
9:23, 11:22, 11:23, 13:5
customers [7] - 10:2,
11:24, 12:3, 14:16,
16:15, 18:14, 27:15

**D**

damage [1] - 35:9
Dan's [2] - 7:14, 16:24
date [1] - 38:11
Davidson [1] - 3:14
deal [5] - 4:24, 25:20,
30:11, 32:24, 33:17
dealing [6] - 7:11, 10:19,
21:16, 27:15, 30:3,
33:18
dealt [2] - 10:11, 30:20
debtor [2] - 22:25, 26:16
debtors [1] - 27:15
decide [5] - 20:4, 21:22,
23:12, 24:19, 27:8
decided [5] - 20:22,
20:23, 21:13, 22:9,
34:21
decides [1] - 25:1
decision [1] - 26:14
decisions [1] - 27:7
declaration [1] - 9:14
Defendants [2] - 1:7,
1:18
defendants [3] - 3:12,
3:15, 6:10
defending [1] - 34:5
defined [2] - 28:5, 28:9
defines [1] - 17:2
definitely [1] - 31:9
Delaware [1] - 28:4
deliver [1] - 15:22
delivery [3] - 8:4, 15:25,

16:5
demanded [1] - 14:24
denied [2] - 8:15, 8:23
DEPUTY [1] - 1:18
Deputy [1] - 3:11
deregulates [1] - 10:8
deregulation [2] - 15:7,
15:11
Deregulation [1] - 10:17
derivative [2] - 11:19,
28:7
describe [1] - 6:13
designed [2] - 25:11,
25:20
determination [5] - 12:9,
22:18, 23:1, 29:21,
29:24
determinations [1] -
34:8
determine [3] - 30:1,
30:25, 31:7
determined [1] - 18:22
determining [2] - 21:5,
26:20
DIANE [1] - 1:15
Diane [1] - 3:8
different [8] - 6:6, 10:9,
13:22, 15:16, 20:7,
26:20, 27:11, 29:16
diligence [3] - 13:11,
13:23, 14:13
Dilts [1] - 8:14
direct [1] - 11:20
directed [1] - 16:7
disconnect [1] - 12:11
discovery [1] - 9:3
discrepancies [2] -
13:12, 13:24
discuss [1] - 37:6
discussing [4] - 22:4,
23:18, 30:4, 36:8
discussion [1] - 29:2
disposed [1] - 17:4
dispute [1] - 30:5
DISTRICT [2] - 1:1, 1:1
docket [1] - 9:14
doctrine [1] - 28:7
doctrines [1] - 33:25
documentation [2] -
11:8, 14:5
documents [2] - 13:18,
27:22
dollars [3] - 4:13, 16:16

done [5] - 10:25, 11:8,
13:22, 18:6, 21:15
dormancy [3] - 20:6,
26:2, 27:10
dormant [1] - 26:4
down [1] - 8:14
drastic [1] - 12:17
due [6] - 13:11, 13:23,
14:13, 24:12, 30:8,
31:14
duty [1] - 10:20

**E**

easily [1] - 33:17
EAST [1] - 1:10
economic [2] - 17:17,
17:23
effect [14] - 7:1, 16:3,
16:10, 16:13, 16:14,
16:20, 16:23, 17:18,
17:23, 18:1, 18:3, 18:12,
18:13
either [4] - 20:6, 28:20,
29:15, 30:25
elsewhere [1] - 10:18
employee [2] - 38:14,
38:16
enact [1] - 6:25
end [4] - 9:3, 19:24,
20:11, 37:12
ended [1] - 22:8
ending [1] - 25:2
enforce [1] - 6:25
engaging [1] - 26:4
enjoin [3] - 3:23, 32:25,
33:21
enjoined [1] - 31:9
enjoining [1] - 36:18
enter [1] - 37:13
entice [2] - 23:7, 23:14
enticement [1] - 23:11
entire [1] - 35:22
entirely [1] - 35:24
ENTITLED [1] - 2:13
ERISTOFF [1] - 1:6
escheat [41] - 13:6, 13:9,
18:24, 19:15, 20:1, 20:3,
20:4, 20:7, 20:10, 20:14,
20:15, 20:22, 21:8,
21:11, 21:13, 21:14,
21:17, 21:21, 21:22,
21:23, 21:24, 21:25,
22:5, 22:15, 22:16, 23:5,

23:8, 23:10, 23:22, 24:6,
25:2, 25:9, 25:19, 25:21,
26:11, 27:1, 27:2, 27:13,
31:3, 34:21
escheatable [1] - 26:7
escheating [1] - 3:24
especially [1] - 25:7
ESQUIRE [3] - 1:15,
1:15, 1:21
essential [1] - 14:8
essentially [2] - 12:1,
34:16
established [1] - 27:18
estimate [7] - 29:3, 29:9,
29:18, 30:5, 30:7, 31:6
estimated [4] - 19:10,
36:17, 36:18, 36:24
estimates [2] - 30:13,
32:25
estimating [1] - 28:14
et [3] - 1:7, 8:2, 10:20
event [1] - 33:2
exact [2] - 16:18, 34:11
example [3] - 10:6,
15:18, 25:25
exception [2] - 20:15,
35:6
exempt [4] - 20:23, 27:3,
36:13, 36:14
exemption [1] - 26:3
exemptions [1] - 25:8
exhibit [1] - 9:12
Exhibit [3] - 6:11, 9:13,
36:8
exist [2] - 27:17, 27:22
existed [1] - 31:5
exists [1] - 24:25
expanded [1] - 28:5
expedited [1] - 31:23
expenses [1] - 13:10
explanation [2] - 14:4,
14:6
exposing [2] - 24:11,
24:17
Express [8] - 14:21,
15:1, 20:3, 21:2, 22:6,
33:24, 34:12, 35:11
extensive [1] - 13:11
extent [4] - 20:5, 28:13,
28:16, 28:23

## F

**FAAAA** [1] - 7:9
**fact** [13] - 5:11, 6:2, 6:22, 7:13, 7:24, 10:2, 11:19, 14:19, 14:24, 20:10, 20:22, 21:11, 29:16
**factor** [1] - 8:17
**factors** [3] - 33:1, 33:14, 34:22
**facts** [3] - 9:10, 12:19, 13:18
**factual** [3] - 5:14, 12:25, 26:20
**factually** [1] - 12:13
**fails** [1] - 26:9
**failure** [1] - 28:17
**fair** [1] - 5:3
**fall** [1] - 27:21
**falls** [1] - 7:7
**fashion** [2] - 8:9, 14:10
**FCC** [1] - 26:16
**federal** [5] - 5:4, 15:7, 15:12, 28:22, 29:24
**fiduciary** [1] - 10:19
**file** [4] - 31:20, 34:9, 34:13, 34:25
**filed** [1] - 32:6
**filing** [1] - 28:20
**financially** [1] - 38:17
**findings** [1] - 9:11
**first** [16] - 3:15, 4:1, 5:8, 14:1, 19:18, 19:23, 20:14, 21:6, 21:8, 22:17, 23:21, 27:12, 28:6, 28:7, 29:6
**FISHER** [1] - 1:10
**FLW** [1] - 1:2
**fly** [1] - 9:1
**follow** [1] - 26:18
**FOLLOWING** [1] - 2:11
**following** [1] - 26:24
**FOR** [1] - 1:1
**force** [1] - 7:1
**foregoing** [1] - 38:9
**forth** [1] - 38:12
**frankly** [9] - 4:25, 7:18, 8:6, 21:1, 31:2, 34:4, 34:20, 35:12, 35:14
**fraud** [1] - 10:20
**FREDA** [1] - 1:12
**free** [1] - 3:16
**FREIGHT** [1] - 1:4

**Freight** [2] - 17:21, 35:16
**Friday** [2] - 32:18, 32:19
**full** [1] - 35:14
**future** [2] - 11:16, 35:16

## G

**Gary** [1] - 12:19
**general** [3] - 14:9, 14:10, 15:4
**General** [1] - 3:11
**GENERAL** [3] - 1:17, 1:18, 1:21
**generally** [1] - 13:6
**given** [4] - 11:4, 12:8, 12:15, 28:10
**granting** [1] - 35:19
**great** [1] - 37:11
**Green** [3] - 3:8, 5:8, 24:1
**GREEN** [26] - 1:15, 4:8, 4:12, 4:21, 5:9, 6:8, 6:10, 9:7, 9:9, 9:13, 9:17, 11:18, 12:18, 15:6, 15:18, 16:1, 17:13, 19:6, 24:2, 28:1, 28:4, 31:13, 31:19, 32:4, 32:21, 35:23
**Green-Kelly** [3] - 3:8, 5:8, 24:1
**GREEN-KELLY** [26] - 1:15, 4:8, 4:12, 4:21, 5:9, 6:8, 6:10, 9:7, 9:9, 9:13, 9:17, 11:18, 12:18, 15:6, 15:18, 16:1, 17:13, 19:6, 24:2, 28:1, 28:4, 31:13, 31:19, 32:4, 32:21, 35:23
**guess** [1] - 31:19

## H

**handles** [1] - 16:15
**harm** [3] - 33:22, 34:12, 34:19
**harms** [1] - 34:15
**hear** [2] - 24:1, 32:2
**hearing** [3] - 11:3, 11:4, 12:17
**HEARING** [1] - 1:4
**held** [2] - 16:8, 24:16
**help** [1] - 10:21
**hereby** [1] - 38:8
**hereinbefore** [1] - 38:11
**holder** [1] - 26:10

**Honor** [30] - 3:6, 3:10, 3:13, 3:19, 4:5, 4:22, 6:8, 9:7, 11:18, 15:6, 18:19, 19:1, 19:16, 19:19, 20:13, 21:4, 22:4, 22:12, 25:17, 27:24, 28:1, 29:5, 31:13, 32:5, 33:3, 33:12, 33:15, 35:4, 35:23, 36:6
**HONORABLE** [1] - 1:12
**hundreds** [1] - 14:14

## I

**ICCA** [7] - 5:5, 6:21, 7:8, 10:8, 10:18, 15:7, 18:23
**idea** [2] - 35:21, 36:10
**identified** [1] - 34:24
**identifies** [1] - 11:22
**identify** [1] - 28:8
**Illinois** [1] - 1:15
**immunity** [3] - 4:3, 4:9, 33:25
**impact** [2] - 6:4, 13:7
**importantly** [1] - 9:2
**impose** [1] - 35:10
**imposing** [1] - 37:9
**IN** [1] - 2:12
**in-state** [2] - 18:24, 30:21
**INC** [1] - 1:4
**incentives** [1] - 8:21
**incidental** [1] - 18:13
**includes** [1] - 29:18
**including** [2] - 13:9, 14:13
**incorporated** [1] - 22:20
**incorporation** [1] - 23:14
**increased** [4] - 13:8, 13:15, 13:16, 14:1
**indeed** [2] - 10:16, 17:22
**indicate** [2] - 8:6, 35:15
**indirect** [6] - 16:1, 16:9, 16:13, 16:14, 16:20
**industry** [2] - 5:18, 11:12
**information** [1] - 14:25
**injunction** [13] - 5:17, 11:3, 12:17, 14:2, 29:23, 31:21, 31:25, 33:2, 33:6, 34:23, 35:20, 37:14
**injunctive** [3] - 4:10, 4:15, 14:3
**inquiry** [1] - 20:12
**insignificant** [2] - 17:24,

18:3
**instance** [1] - 13:4
**instead** [1] - 5:2
**intangible** [2] - 28:10, 31:4
**interest** [5] - 27:4, 28:12, 36:23, 37:2, 37:4
**interested** [1] - 38:17
**Interstate** [1] - 5:4
**interstate** [2] - 18:12, 18:14
**invoice** [2] - 7:19, 7:22
**involving** [1] - 13:12
**irreparable** [2] - 33:22, 34:12
**IS** [1] - 2:11
**issue** [12] - 6:18, 9:20, 14:20, 22:13, 27:14, 29:6, 29:20, 31:15, 31:22, 32:13, 32:24, 35:3
**issued** [1] - 33:6
**issuers** [1] - 26:17
**issues** [2] - 18:25, 28:23
**issuing** [1] - 10:24
**items** [3] - 9:21, 36:12, 36:13
**itself** [1] - 16:2

## J

**Jersey** [17] - 15:19, 19:12, 22:6, 22:21, 23:24, 24:14, 24:21, 25:5, 25:6, 25:8, 25:13, 25:17, 25:18, 25:23, 26:5, 36:5, 38:8
**JERSEY** [2] - 1:1, 1:17
**Jersey's** [1] - 24:21
**JONATHAN** [1] - 1:18
**Jonathan** [1] - 3:11
**Judge** [1] - 22:9
**judgment** [3] - 24:5, 24:8, 25:5
**JULY** [1] - 1:6
**jurisdiction** [3] - 24:10, 24:16, 24:19

## K

**keep** [4] - 28:17, 29:8, 29:14, 29:17
**Kellie** [1] - 3:7
**KELLIE** [1] - 1:15

**Kelly** [3] - 3:8, 5:8, 24:1
**KELLY** [26] - 1:15, 4:8, 4:12, 4:21, 5:9, 6:8, 6:10, 9:7, 9:9, 9:13, 9:17, 11:18, 12:18, 15:6, 15:18, 16:1, 17:13, 19:6, 24:2, 28:1, 28:4, 31:13, 31:19, 32:4, 32:21, 35:23
**kind** [9] - 13:20, 13:21, 14:18, 20:4, 20:7, 20:24, 21:23, 22:10, 34:10
**kinds** [2] - 8:7, 26:21
**known** [14] - 5:5, 19:5, 19:9, 19:14, 19:24, 19:25, 20:11, 23:13, 27:17, 33:19, 33:20, 36:16

**L**

**lacks** [1] - 26:10
**language** [3] - 6:1, 21:5, 21:18
**large** [2] - 19:10, 35:17
**last** [13] - 4:25, 13:14, 14:23, 19:5, 19:9, 19:14, 19:24, 19:25, 20:11, 23:12, 27:17, 33:14, 33:19
**Lavery** [1] - 3:7
**LAVERY** [2] - 1:15, 3:6
**law** [22] - 4:3, 4:7, 4:14, 4:16, 4:19, 6:25, 7:1, 8:4, 10:15, 16:25, 18:1, 20:20, 20:22, 21:20, 25:4, 28:9, 28:21, 29:6, 29:20, 29:24, 32:13
**laws** [2] - 13:9, 20:14
**lawsuit** [2] - 34:5, 34:9
**least** [1] - 31:22
**led** [1] - 24:4
**letters** [1] - 14:14
**level** [1] - 34:6
**liability** [5] - 9:25, 24:12, 24:18, 36:17, 36:19
**licensing** [1] - 17:22
**likelihood** [7] - 6:20, 9:1, 9:5, 11:4, 18:5, 27:18, 31:11
**likely** [2] - 13:15, 13:25
**limited** [2] - 33:13, 37:13
**limits** [1] - 7:10
**line** [4] - 4:25, 6:15,

25:16, 26:8
**LLP** [1] - 1:14
**look** [7] - 9:16, 9:17, 16:24, 17:20, 18:9, 36:1, 36:4
**looked** [2] - 6:21, 7:5
**looking** [7] - 7:14, 8:4, 21:16, 25:13, 30:18, 33:21, 34:15
**looks** [1] - 32:15
**lose** [1] - 34:6
**loss** [1] - 13:14
**lost** [1] - 13:7
**love** [1] - 14:22

**M**

**mail** [1] - 14:14
**major** [1] - 30:4
**match** [2] - 7:19, 7:21
**matter** [2] - 16:16, 28:19
**MATTER** [1] - 2:13
**meal** [1] - 8:16
**mean** [2] - 25:23, 31:24
**means** [2] - 7:20, 31:8
**meat** [1] - 13:17
**meet** [1] - 8:19
**Merchants** [1] - 22:6
**mere** [1] - 8:8
**merely** [2] - 17:25, 26:2
**method** [1] - 30:18
**might** [4] - 11:16, 12:13, 16:11, 34:25
**modern** [1] - 21:15
**modest** [1] - 37:9
**moment** [2] - 32:25, 33:16
**monetary** [1] - 35:9
**money** [4] - 16:18, 16:19, 24:6, 34:17
**Morales** [2] - 15:8, 16:13
**morning** [6] - 3:6, 3:9, 3:10, 18:19, 18:20, 29:2
**most** [1] - 5:21
**Motor** [1] - 15:19
**motor** [9] - 7:2, 8:21, 15:20, 16:2, 16:4, 16:8, 16:10, 17:1, 17:6
**move** [1] - 21:9
**moved** [2] - 3:23, 10:1
**movement** [1] - 17:3
**MR** [26] - 3:10, 3:19, 4:5, 4:22, 18:19, 19:1, 19:8,

19:16, 19:19, 20:13, 21:4, 22:3, 22:12, 27:24, 29:5, 32:5, 32:8, 32:11, 33:3, 33:11, 33:15, 35:3, 36:6, 36:12, 36:20, 37:4
**MS** [26] - 3:6, 4:8, 4:12, 4:21, 5:9, 6:8, 6:10, 9:7, 9:9, 9:13, 9:17, 11:18, 12:18, 15:6, 15:18, 16:1, 17:13, 19:6, 24:2, 28:1, 28:4, 31:13, 31:19, 32:4, 32:21, 35:23
**multiple** [2] - 24:12, 24:18
**must** [2] - 5:23, 16:25
**MY** [1] - 2:12

**N**

**narrow** [1] - 33:7
**NATIONAL** [1] - 1:4
**National** [1] - 35:16
**Nationwide** [1] - 17:21
**nature** [2] - 6:17, 11:25
**necessarily** [1] - 28:24
**need** [1] - 31:9
**never** [1] - 20:12
**NEW** [2] - 1:1, 1:17
**New** [19] - 15:19, 19:12, 22:6, 22:21, 23:24, 24:14, 24:21, 25:5, 25:6, 25:8, 25:13, 25:16, 25:18, 25:23, 26:5, 28:4, 36:5, 38:8
**next** [2] - 18:10, 32:18
**NFI** [7] - 10:3, 12:3, 16:15, 23:19, 25:6, 25:9, 26:16
**NFI's** [2] - 12:4, 12:7
**niche** [1] - 27:1
**Nichols** [1] - 12:20
**Ninth** [2] - 8:15, 8:19
**NJ** [1] - 1:10
**NO** [1] - 1:2
**none** [1] - 13:24
**nonetheless** [1] - 8:13
**normally** [1] - 14:17
**noted** [2] - 10:17, 10:18
**NOTES** [1] - 2:12
**nothing** [2] - 8:6, 12:24
**number** [3] - 8:25, 9:14, 36:7
**numbers** [1] - 36:11

**O**

**object** [1] - 34:3
**obligation** [2] - 10:23, 28:11
**obviously** [9] - 3:22, 14:25, 17:4, 17:8, 18:22, 32:15, 33:23, 34:18, 35:8
**occur** [1] - 15:25
**occurred** [4] - 12:8, 15:17, 17:3, 34:4
**odd** [1] - 7:20
**OF** [5] - 1:1, 1:4, 1:17, 1:17, 2:12
**offending** [1] - 33:8
**offer** [1] - 10:4
**offers** [1] - 10:3
**OFFICE** [1] - 1:17
**Official** [1] - 38:6
**OFFICIAL** [2] - 1:25, 2:18
**old** [1] - 16:6
**once** [2] - 14:17, 17:4
**one** [13] - 3:14, 4:1, 5:1, 14:1, 14:22, 17:23, 18:18, 31:1, 33:7, 34:18, 35:7, 35:24
**ones** [2] - 9:20, 25:7
**open** [2] - 3:1, 22:1
**opinion** [1] - 21:2
**opportunity** [1] - 34:7
**order** [2] - 32:1, 37:14
**orders** [1] - 24:7
**original** [1] - 24:15
**out-of-state** [4] - 19:3, 27:15, 30:20, 33:19
**outside** [1] - 36:5
**owed** [1] - 10:2
**own** [1] - 21:3
**owner** [3] - 25:12, 25:22
**owners** [2] - 24:11, 33:19

**P**

**P.SIDAMON** [1] - 1:6
**P.SIDAMON-ERISTOFF** [1] - 1:6
**page** [3] - 9:15, 9:17, 9:24
**paid** [3] - 11:24, 28:12, 36:2
**paragraph** [4] - 9:18, 13:4, 13:14, 14:11
**part** [2] - 16:23, 33:21

**particular** [3] - 20:4, 20:23, 36:24
**parties** [3] - 14:3, 26:4, 38:15
**parts** [1] - 33:8
**party** [2] - 20:19, 22:23
**past** [1] - 19:18
**pay** [3] - 7:19, 34:1, 37:12
**paying** [1] - 34:7
**payment** [1] - 7:21
**payments** [2] - 6:16, 9:23
**payroll** [1] - 27:16
**PEITZ** [27] - 1:18, 3:10, 3:19, 4:5, 4:22, 18:19, 19:1, 19:8, 19:16, 19:19, 20:13, 21:4, 22:3, 22:12, 27:24, 29:5, 32:5, 32:8, 32:11, 33:3, 33:11, 33:15, 35:3, 36:6, 36:12, 36:20, 37:4
**Peitz** [4] - 3:11, 18:17, 26:14, 34:2
**penalty** [4] - 28:17, 28:18, 28:23, 30:7
**Pennsylvania** [5] - 24:3, 24:5, 24:7, 24:9, 24:17
**people** [1] - 27:16
**percent** [2] - 30:20, 30:21
**perhaps** [1] - 7:23
**period** [4] - 5:22, 19:10, 21:12, 26:2
**periods** [3] - 20:6, 20:7, 27:10
**person** [1] - 25:24
**personnel** [2] - 13:10, 13:20
**place** [2] - 22:9, 38:11
**plaintiff** [6] - 3:5, 3:23, 5:6, 33:23, 34:19, 35:8
**Plaintiff** [2] - 1:4, 1:16
**plaintiff's** [2] - 33:5, 36:7
**plus** [5] - 36:15, 36:22, 37:1, 37:4, 37:5
**point** [7] - 9:9, 14:24, 26:19, 27:17, 30:13, 30:23, 31:10
**points** [1] - 29:5
**policies** [3] - 12:4, 17:14, 25:15
**policy** [1] - 12:7
**position** [1] - 24:21

**possibly** [2] - 24:11, 25:23
**post** [2] - 35:13, 37:10
**potential** [4] - 10:1, 12:2, 24:11, 26:15
**power** [2] - 21:21, 21:22
**practice** [2] - 5:18, 21:17
**practices** [1] - 10:14
**Prashant** [1] - 36:8
**preempt** [1] - 6:24
**preempted** [6] - 8:14, 8:23, 15:10, 28:15, 28:25, 29:4
**preemption** [8] - 4:14, 5:4, 5:13, 7:11, 15:6, 16:9, 16:17, 30:12
**preliminary** [12] - 5:17, 11:3, 12:16, 14:2, 29:23, 31:21, 31:25, 33:2, 33:5, 34:23, 35:19, 37:13
**prepared** [1] - 37:7
**PRESIDENT** [1] - 1:21
**presume** [1] - 29:13
**presumed** [1] - 19:11
**pretty** [1] - 15:15
**price** [2] - 7:2, 10:25
**prices** [2] - 8:17, 13:16
**primary** [2] - 24:25, 26:9
**prime** [1] - 37:5
**priority** [32] - 4:24, 6:7, 14:23, 18:16, 18:25, 19:18, 19:20, 19:23, 20:25, 21:6, 21:7, 22:4, 22:7, 22:14, 22:15, 22:17, 23:2, 23:16, 23:20, 24:4, 24:23, 25:10, 25:15, 26:8, 26:23, 27:7, 28:5, 28:15, 28:25, 30:3, 30:12
**problem** [6] - 16:23, 24:2, 24:20, 30:2, 30:10, 32:12
**Proceedings** [1] - 37:19
**proceedings** [1] - 38:10
**process** [5] - 24:12, 28:6, 30:8, 31:15, 34:3
**produce** [1] - 11:15
**prong** [1] - 25:19
**proof** [1] - 12:16
**proofs** [1] - 6:6
**property** [44] - 3:24, 7:4, 7:10, 17:1, 17:3, 17:7, 17:9, 20:5, 20:15, 20:16,

20:17, 20:24, 21:8, 21:10, 21:24, 22:16, 22:23, 23:8, 23:11, 23:20, 23:22, 23:25, 24:22, 25:4, 25:6, 25:11, 25:14, 25:21, 26:3, 26:6, 27:3, 28:8, 28:10, 28:12, 28:14, 28:24, 29:3, 29:9, 29:19, 31:4, 35:25
**Property** [1] - 3:25
**provide** [4] - 8:18, 9:10, 34:22, 35:7
**provided** [3] - 6:6, 9:5, 13:18
**providing** [1] - 5:25
**provision** [2] - 7:1, 7:8
**purchase** [2] - 6:17, 10:2
**purchaser** [1] - 15:1
**purpose** [2] - 23:4, 23:13
**PURSUANT** [1] - 2:10
**put** [1] - 21:3
**putting** [1] - 12:7

**Q**

**questions** [1] - 12:13

**R**

**rates** [12] - 6:4, 8:2, 8:5, 8:8, 10:8, 10:12, 13:7, 16:21, 16:23, 17:10, 17:12, 17:18
**rather** [1] - 35:17
**read** [1] - 21:1
**reading** [1] - 15:15
**real** [1] - 29:1
**really** [17] - 4:6, 8:2, 10:24, 11:1, 14:15, 14:18, 14:22, 16:15, 22:8, 26:25, 30:15, 31:24, 31:25, 32:9, 32:12, 34:11, 35:9
**reason** [2] - 24:15, 34:7
**reasonable** [4] - 29:9, 29:21, 29:25
**receivable** [1] - 9:22
**receive** [1] - 16:6
**reclassified** [1] - 9:25
**record** [8] - 9:6, 11:16, 12:9, 17:11, 17:25, 18:2, 18:13, 34:20
**records** [10] - 19:9, 28:17, 29:7, 29:8, 29:10,

29:12, 29:14, 29:17, 30:19, 31:2
**recover** [2] - 33:25, 34:14
**Reed** [1] - 3:7
**REED** [1] - 1:14
**reference** [1] - 5:19
**referencing** [2] - 9:12, 10:11
**refund** [3] - 9:25, 10:14, 17:13
**refunds** [7] - 5:23, 8:1, 10:1, 10:7, 10:11, 12:2
**regard** [4] - 4:2, 5:4, 18:23, 30:9
**regardless** [2] - 7:22, 24:25
**regulate** [1] - 10:13
**regulating** [5] - 15:11, 15:20, 15:21, 16:2, 16:3
**regulation** [1] - 6:25
**reject** [2] - 17:16, 18:4
**relate** [2] - 10:12, 33:19
**related** [5] - 7:2, 8:20, 10:24, 14:13, 14:17
**relates** [2] - 7:12, 10:7
**relating** [1] - 17:2
**relationship** [3] - 20:9, 26:5, 27:9
**relative** [3] - 8:22, 38:13, 38:16
**relatively** [1] - 35:11
**relevant** [2] - 16:19, 16:20
**relied** [1] - 7:6
**relief** [3] - 4:10, 4:15, 14:4
**remainder** [1] - 4:17
**remaining** [1] - 33:8
**remains** [1] - 27:12
**remedy** [1] - 12:17
**remember** [2] - 14:21, 35:12
**remove** [1] - 28:21
**replaced** [1] - 28:22
**report** [5] - 6:12, 6:13, 9:10, 11:22
**REPORTER** [2] - 1:25, 2:18
**Reporter** [2] - 38:7
**representations** [1] - 5:14
**represented** [1] - 17:11

**requesting** [1] - 4:15
**requests** [1] - 5:23
**required** [3] - 13:20, 13:21, 29:7
**requires** [1] - 18:2
**requiring** [1] - 16:10
**resolve** [2] - 13:12, 13:24
**resolves** [1] - 35:1
**respect** [6] - 7:3, 7:9, 14:14, 17:6, 19:8, 36:3
**respond** [2] - 6:8, 9:7
**responded** [1] - 4:7
**rest** [1] - 8:16
**restrain** [1] - 32:2
**result** [2] - 13:15, 13:25
**Retail** [1] - 22:6
**retailers** [2] - 15:21, 16:3
**revenue** [2] - 13:7, 13:15
**reversed** [1] - 24:8
**rights** [5] - 20:18, 22:20, 23:19, 24:19, 28:7
**rise** [2] - 3:2, 37:18
**ropes** [1] - 18:18
**route** [1] - 7:2
**routes** [2] - 8:18, 8:22
**row** [1] - 3:15
**Rowe** [3] - 7:6, 15:18, 16:13
**rule** [10] - 19:18, 19:23, 20:25, 24:22, 24:25, 25:20, 26:9, 27:12, 28:5, 31:8
**rules** [10] - 24:4, 25:11, 25:15, 26:8, 26:9, 26:23, 27:7, 28:15, 28:25, 30:4
**RUSSONIELLO** [2] - 1:24, 2:17
**Russoniello** [4] - 2:17, 38:6, 38:23, 38:24

**S**

**S/Vincent** [2] - 2:17, 38:23
**sad** [1] - 15:2
**sale** [1] - 14:24
**satisfied** [1] - 34:22
**satisfy** [1] - 5:17
**scope** [1] - 7:11
**SCOTT** [1] - 1:21
**Scott** [1] - 3:9
**seat** [2] - 3:20, 33:16
**second** [16] - 19:20,

19:22, 19:23, 20:16, 20:24, 21:6, 21:7, 21:9, 22:4, 22:15, 22:19, 23:1, 23:16, 23:20, 23:23, 25:19
**secondary** [2] - 24:22, 25:20
**SECTION** [1] - 2:10
**see** [6] - 11:8, 32:9, 32:14, 32:22, 36:4, 37:15
**seeing** [2] - 32:20, 34:24
**seek** [1] - 31:21
**seeking** [1] - 14:3
**sell** [1] - 10:4
**send** [1] - 25:6
**sending** [1] - 14:13
**SENIOR** [1] - 1:21
**sentence** [1] - 13:14
**separate** [2] - 34:9, 34:13
**service** [3] - 7:2, 7:21, 17:6
**services** [8] - 7:12, 8:5, 8:18, 8:22, 10:3, 10:5, 11:24, 17:2
**set** [3] - 8:17, 14:18, 38:11
**setting** [2] - 8:5, 10:25
**Seventh** [2] - 10:7, 17:20
**several** [1] - 3:22
**Shah** [3] - 6:11, 9:13, 36:8
**shield** [1] - 29:11
**shifts** [1] - 8:20
**shot** [1] - 22:17
**SHOW** [1] - 1:4
**show** [4] - 6:1, 6:23, 10:23, 32:1
**showing** [2] - 18:11, 18:23
**shown** [2] - 18:2, 18:13
**significant** [3] - 13:6, 14:12, 17:17
**similar** [1] - 34:20
**similarly** [2] - 14:11, 17:20
**simple** [1] - 5:23
**simply** [7] - 6:19, 6:22, 7:15, 20:9, 23:2, 27:22, 28:23
**sit** [2] - 3:17
**sitting** [1] - 3:15
**situation** [3] - 16:12,

25:3, 25:21
**situations** [4] - 8:7, 15:17, 26:20, 31:1
**small** [1] - 35:11
**Smith** [1] - 3:7
**SMITH** [1] - 1:14
**sold** [1] - 24:7
**someone** [1] - 28:11
**sometime** [1] - 35:16
**sometimes** [1] - 15:3
**sorry** [1] - 17:16
**sort** [2] - 17:17, 28:5
**sovereign** [6] - 4:3, 4:9, 20:18, 22:20, 23:19, 33:24
**sovereignty** [1] - 22:22
**specific** [1] - 23:23
**specify** [1] - 37:7
**spend** [1] - 16:16
**stage** [1] - 30:15
**standards** [1] - 11:12
**start** [2] - 4:1, 5:2
**starts** [2] - 9:18, 24:14
**State** [14] - 3:24, 4:2, 9:11, 11:20, 12:1, 15:11, 19:19, 24:5, 28:13, 29:22, 30:1, 34:16, 35:9, 38:8
**STATE** [2] - 1:10, 1:17
**state** [50] - 4:3, 4:7, 4:16, 4:19, 6:25, 13:9, 18:24, 19:3, 19:15, 20:14, 20:16, 20:22, 21:8, 21:9, 21:17, 22:4, 22:15, 22:17, 22:19, 22:24, 22:25, 23:3, 23:4, 23:7, 23:9, 23:12, 23:14, 23:15, 23:21, 23:24, 24:23, 25:1, 25:3, 25:10, 25:12, 25:13, 25:22, 26:11, 27:15, 28:9, 28:21, 29:6, 29:13, 29:19, 29:20, 30:20, 30:21, 32:13, 33:19, 34:3
**state's** [1] - 23:2
**statement** [3] - 5:24, 17:15, 20:21
**statements** [3] - 5:18, 5:21, 13:1
**States** [1] - 38:6
**states** [13] - 10:13, 20:6, 21:12, 21:14, 23:6,

23:18, 24:10, 25:7, 25:18, 27:7, 35:25, 36:13, 36:14
**STATES** [2] - 1:1, 1:10
**Statland** [3] - 10:6, 10:10, 10:16
**stature** [1] - 31:6
**statute** [18] - 6:24, 10:15, 15:12, 15:20, 16:2, 16:7, 17:22, 19:15, 20:1, 20:10, 21:24, 21:25, 23:10, 25:2, 25:25, 26:12, 27:2
**statutes** [3] - 21:13, 21:14, 25:19
**statutory** [2] - 36:23, 37:4
**STENOGRAPHIC** [1] - 2:12
**stenographically** [1] - 38:10
**step** [3] - 27:5, 28:6
**Step** [4] - 20:12, 20:13, 22:1
**still** [7] - 4:16, 20:8, 21:19, 22:19, 22:21, 23:19, 23:24
**stop** [3] - 12:5, 20:12, 26:4
**STREET** [1] - 1:10
**subject** [1] - 13:5
**substantive** [1] - 26:9
**subsumed** [1] - 4:13
**success** [7] - 6:20, 9:1, 9:5, 11:4, 18:5, 27:18, 31:11
**successful** [1] - 9:4
**sufficiently** [1] - 17:5
**suggesting** [1] - 17:9
**suit** [2] - 33:25, 34:13
**support** [1] - 15:5
**supports** [2] - 6:12, 20:21
**supposed** [3] - 19:24, 25:21, 26:24
**supposedly** [1] - 13:23
**Supreme** [9] - 8:14, 8:23, 10:17, 15:8, 15:13, 16:8, 16:24, 24:8, 26:19
**surprised** [2] - 5:11, 6:5
**surrounding** [1] - 30:19
**sword** [1] - 29:11
**system** [1] - 14:18

**Systems** [1] - 17:21

**T**

**talks** [4] - 6:24, 8:4, 14:11, 16:25
**tenuous** [1] - 15:10
**Termination** [1] - 5:5
**terms** [1] - 4:12
**test** [1] - 8:20
**Texas** [8] - 4:25, 18:16, 18:25, 21:5, 23:21, 24:14, 25:16, 25:18
**THE** [55] - 1:1, 1:12, 1:17, 2:10, 2:12, 3:2, 3:3, 3:16, 3:20, 4:6, 4:9, 4:18, 4:23, 5:10, 6:9, 6:19, 9:8, 9:12, 9:15, 10:10, 12:5, 12:21, 15:13, 15:23, 16:22, 17:15, 18:20, 19:2, 19:7, 19:13, 19:17, 19:21, 20:20, 21:10, 22:8, 24:1, 26:13, 27:25, 28:3, 30:2, 31:16, 31:24, 32:7, 32:10, 32:14, 32:22, 33:10, 33:13, 33:16, 35:5, 36:10, 36:18, 37:3, 37:9, 37:18
**therefore** [2] - 6:4, 27:14
**they've** [1] - 21:15
**Third** [8] - 20:2, 21:2, 21:18, 21:19, 21:20, 22:3, 24:24, 26:13
**third** [2] - 22:7, 22:14
**thousands** [1] - 13:12
**three** [2] - 26:18, 28:6
**three-step** [1] - 28:6
**throws** [1] - 20:24
**ticket** [2] - 10:11, 10:14
**TITLE** [1] - 2:10
**TO** [2] - 2:10, 2:11
**tobacco** [3] - 15:21, 16:3, 16:6
**today** [12] - 3:14, 4:19, 11:1, 11:3, 28:20, 30:10, 31:7, 31:20, 32:18, 32:21, 32:23, 35:1
**toll** [2] - 20:7, 31:22
**tolled** [1] - 26:2
**tomorrow** [2] - 28:20, 32:18
**total** [1] - 6:3
**towed** [1] - 17:4

**track** [1] - 13:10
**traction** [1] - 5:1
**transaction** [1] - 26:1
**transactions** [1] - 13:13
**TRANSCRIPT** [2] - 1:4, 2:11
**transcript** [1] - 38:9
**TRANSCRIPTION** [1] - 2:12
**Transport** [1] - 15:19
**transportation** [12] - 6:17, 7:3, 7:10, 10:3, 10:4, 11:24, 17:1, 17:2, 17:7, 17:9, 20:19, 22:24
**TRENTON** [1] - 1:10
**trilogy** [1] - 26:18
**true** [1] - 38:9
**trying** [4] - 12:1, 12:10, 26:6, 29:15
**turn** [4] - 9:24, 18:16, 18:17, 23:17
**turning** [1] - 18:10
**two** [3] - 26:22, 29:16, 33:4

**U**

**U.S** [1] - 2:18
**U.S.C** [1] - 2:10
**U.S.COURT** [1] - 1:25
**ultimately** [1] - 10:24
**Unclaimed** [1] - 3:25
**unclaimed** [3] - 24:6, 28:24, 29:3
**under** [16] - 3:24, 4:24, 5:4, 6:20, 6:24, 10:13, 16:13, 19:20, 19:23, 23:16, 23:20, 24:18, 24:22, 27:12, 29:22
**underlying** [2] - 11:7, 25:15
**understood** [1] - 19:4
**Union** [5] - 24:3, 24:4, 24:6, 24:11, 24:16
**UNITED** [2] - 1:1, 1:10
**United** [1] - 38:6
**unresolved** [1] - 9:21
**up** [11] - 5:3, 7:19, 7:21, 11:5, 12:24, 13:1, 14:18, 19:13, 22:8, 25:2, 30:5
**USDJ** [1] - 1:12

**V**

**vacation** [1] - 32:19
**vehicles** [1] - 15:20
**verified** [8] - 5:14, 5:15, 5:24, 8:9, 12:18, 12:19, 12:22, 12:23
**VICE** [1] - 1:21
**VICE-PRESIDENT** [1] - 1:21
**Vincent** [2] - 38:6, 38:24
**VINCENT** [2] - 1:24, 2:17
**violation** [5] - 10:20, 12:3, 12:7, 24:13, 29:23
**virtually** [1] - 19:4
**vis-à-vis** [1] - 10:22

**W**

**wait** [1] - 32:22
**ways** [1] - 29:16
**week** [2] - 32:18, 32:20
**weight** [2] - 12:12, 12:14
**Western** [5] - 24:3, 24:4, 24:6, 24:11, 24:16
**whole** [2] - 4:17, 26:19
**windfall** [1] - 26:15
**WOLFSON** [1] - 1:12
**word** [1] - 12:6
**worded** [1] - 27:2
**words** [2] - 7:9, 12:7
**written** [1] - 31:6
**wrote** [1] - 22:10

**Y**

**years** [1] - 30:19
**York** [1] - 28:4